Benjamin G. SANCHEZ et al., Appellants,

v.

Kenneth R. LEGGETT d/b/a Leggett Weld-
ing & Construction Company, Appellee.

No. 541.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 30, 1971.

Rehearing Denied Feb. 4, 1971.

Utter & Chase, Carl C. Chase, Allison, Maddin, White & Brin, Inc., Ronald Brin, Corpus Christi, for appellants.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, W. N. Woolsey, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

The appellant Benjamin G. Sanchez brought suit for damages against Kenneth R. Leggett d/b/a Leggett Welding & Construction Company. The National Surety Corporation intervened asserting a subrogation interest for workmen's compensation benefits that they paid to Sanchez. Leggett interposed the defense that Sanchez was a loaned servant or temporary employee in his third party action against them. The trial court granted Leggett's motion for summary judgment, whereupon Sanchez and National Surety Corporation have perfected their appeal.

On October 29, 1967 Sanchez, a general employee of L. H. Pruett, d/b/a Pruett Lease Services, sustained serious personal injuries while engaged in cleaning a "heater treater" on an oil field lease near Beeville, Texas. Leggett had contracted to do the cleaning job. Because of a shortage of employees, Leggett contacted Pruett to furnish him two workmen to participate in the cleaning operation. Sanchez was one of these workmen. On the morning of the 29th, Leggett's foreman picked up Sanchez and a fellow worker named Garcia in Beeville. Sanchez was not told by anyone the particular type of work that he was going to do for Leggett on this particular day. After they arrived at the jobsite he was then told that they were going to clean out the heater. To do so he and another man were placed in a mobile type basket which was operated by a truck. Sanchez worked in and out of the heater. While working on the heater the heater toppled over killing a fellow worker and seriously injuring Sanchez.

Sanchez alleged in his petition that he was present on the lease location in question *in obedience to the command of his employer* Pruett whose business encompassed the furnishing of personnel for specified oil field work. He alleged that a contractual agreement existed between his employer Pruett and the defendant Leggett whereby it was agreed that Sanchez would at all times remain the employee of Pruett Lease Service and would not become the loaned servant of Leggett. Sanchez further contended that his employer Pruett paid the workmen's compensation benefits to him. Because of such payment by the intervenor National Surety Corporation, Sanchez alleged that Leggett was estopped to assert the defense of a loaned servant or temporary employee. The trial court in granting summary judgment for Leggett was of the opinion that Sanchez was a special employee or loaned servant as a matter of law. We disagree.

The appellants Sanchez and National Surety Corporation contended in a series of points of error that Sanchez was not a borrowed or loaned servant as a matter of law because there were material fact issues to be determined by a jury as to whether or not by the nature of the work, Sanchez was an employee of Pruett or Leggett; that there was a material fact issue raised as to the contract between Pruett and Leggett for the benefit of Sanchez; and that defendant Leggett was estopped by his actions to deny the existence of a contract for the benefit of Sanchez, or that there

was a material issue of fact which would require the submission of such issue to a jury.

Where a trial court has granted a summary judgment, the appellate court must determine whether the summary judgment record establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. The question is: Does the summary judgment proof here, establish as a matter of law that there is no genuine issue of fact? Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. 1970); Harrington v. Young Men's Christian Ass'n of Houston, 452 S.W.2d 423 (Tex.1970).

The appellees admit that the burden of proof is upon them and that all doubts as to the existence of a genuine issue as to a material fact is to be resolved against them. There are other applicable rules regarding summary judgment law relative to the evidence received. The evidence must be viewed in the light most favorable to the party opposing the motion. All conflicts in evidence are to be disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. It is also the rule that evidence which favors the movant's position is not to be considered unless it is uncontradicted. Even if it is uncontradicted, if it comes from an interested witness, it cannot be considered as doing more than raising an issue of fact unless it is clear, direct and positive and there are no circumstances in evidence which tend to discredit or impeach the testimony. Gibbs v. General Motors Corporation, supra; Harrington v. Young Men's Christian Ass'n of Houston, supra; Broussard v. Moon, 431 S.W.2d 534 (Tex.1968); Gracey v. West, 422 S.W.2d 913 (Tex.1968); Travis County Water Control & Imp. Dist. No. 12 v. McMillen, 414 S.W.2d 450 (Tex.1966); and Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.1965).

The evidence viewed consistent with the above recited rules raises a fact issue as to the status of Sanchez. Appellee Leggett admitted in his deposition that he had an agreement with Pruett to the extent that he would cover his employees and Leggett would cover his employees with insurance. He also testified that if he needed any number of men it would be up to Pruett which particular men he would send. For instance, he testified "and if you needed them (the men) for a week, say, you wanted five men for a week, he might replace one the second day or the third day or the fourth day, and you did not really care, as long as you had your five men out there?" Answer: "That's right". At another occasion Leggett testified that as far as Sanchez was concerned or any other men that Mr. Pruett sent over to Leggett's organization " * * * you (Leggett) would have no discussion with them that they were to be your employees, and that if anything happened you would cover them or anything like that?" Answer by Leggett "No." "And they were never told anything by your organization that they were anything other than Pruett's employees?" Answer: "That's right, sir." At another time Leggett testified that Pruett would send different men out to the jobs on different occasions and that he never knew what employee he was going to get; that sometimes Pruett would send the same man two or three times in a row and then he would switch employees on him. On another occasion Leggett testified relative to another man by the name of Davila who happened to not show up the second day of work. Leggett said "I don't remember the names, I was short one man that day. I don't remember now whether it was a Leggett man or Pruitt man, it seems now like it was a Pruitt man."

One of Leggett's employees testified that regardless of where he worked, he considered himself to be an employee of Leggett. This employee was then asked whether he knew Sanchez and after admitting that he did, he was asked how many times he had

worked with Sanchez before the accident. He stated that he had worked a day or two with him. He was then asked if Sanchez had told him whom he worked for and he said yes, that Sanchez had told him he was working for Pruett's Lease Service and for nobody else. After reviewing the deposition testimony of appellee Leggett and that of his employees Joe Conway and Sebastian Alejandro, it is clear to us that they all referred to appellant Sanchez as being Pruett's employee. This testimony and that of Pruett and Sanchez raises a material fact issue that should at least be presented to a jury for a determination of Sanchez's status.

■ It is clear Texas law that where there is a contract between the general and special employer which resolves the question of the employment status, then the factual consideration of the right to control the details of the work, is unnecessary. Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.1963); Magnolia Petroleum Company v. Francis, 169 S.W.2d 286 (Tex.Civ.App.—Beaumont 1943, err. ref.). Pruett had a verbal agreement[1]

1. Pruett's affidavit which set out the entire oral agreement was as follows:

"My name is L. H. Pruett and I reside in Beeville, Bee County, Texas; that on and prior to the 29th day of October, 1967, I was engaged in the lease service business individually and called my business 'Pruett's Lease Service'.

The operation of this business consisted of work of a contract nature, either verbal or written, primarily around various leasehold and oilfield locations out of Beeville, Texas. The purpose of my operation of the business was to provide services to leasehold operators and other persons requiring work or a labor force for use in connection with my business. In that connection, the contemplation of my employment is that my employees would almost without course be working on some location other than my premises. That this is the general nature of my business and my work is almost always conducted this way. I paid my employees withheld Social Securty and income tax from their pay-checks, and all of my employees, including Benjamin G. Sanchez, worked for my company, Pruett's Lease Service, in obedience to my directions and in performance of my general duties of either using my own crew and working directly on a particular leasehold or in furnishing contract labor incidentally to someone else working around the leasehold.

I, alone, had the right to hire and fire my employees and in particular, Benjamin G. Sanchez, whom I considered to be a very good employee, in that he had worked for me some length of time. On October 29, 1967, Benjamin G. Sanchez was working and had been directed, along with several other hands, to do leasehold work on the H. L. Brown, Jr. Lease near Rockport, Texas. At the time of this accident, Benjamin G. Sanchez was working pursuant to his employment by my company, engaged in the same type of duties that my business contemplates. However, his work would be merely temporary for a few days at the most on the Brown Lease and his following of directions for either Kenneth R. Leggett, his foreman, or any other man on the job, I had sent him out on, would be by virtue of his obedience to my directions to him to do so, and, in that connection, his doing so in direct obedience to the direction of and in the performance of his duties to myself as his employer. I had the ultimate right of hiring him and firing him and could have replaced Benjamin G. Sanchez if I had desired to send another employee out on the particular job where Benjamin G. Sanchez was directed to go. Sometime prior to 29th day of October, 1967, I had discussed with Mr. Kenneth R. Leggett, lease service work, and the furnishing of services and/or employees to Kenneth R. Leggett. We had a verbal agreement, that at all times, my employees were to be considered my employees under my supervision, direction, and control and, that I would provide insurance coverage, pay these men, and withhold Social Security and income tax from their pay-checks. Our agreement also contemplated that his employees were his own independent employees and subject to his right of control with the like agreement that they would be his employees. We further had an agreement that as far as insurance coverage for the respective employees, both mine and his, that I would cover my employees and that he would cover his employees, and that we would provide satisfactory insurance policies in that connection. We, also, agreed that if anything happened in the form of an injury to either one of his employees or to one of my employees, that my in-

with Leggett whereby Pruett's employees, including Sanchez, were at all times to be considered as Pruett's employees. Pruett would provide insurance coverage, pay his men, withhold social security and income tax from their pay checks. The agreement provided that his employees were to be independent employees of H. L. Pruett, d/b/a Pruett's Lease Service. The agreement was made that in the event of injury to either of appellee Leggett's employees or to Pruett's employees that Pruett and/or Leggett's insurance carrier would cover their respective employees. In this connection Pruett's insurance carrier did in fact comply with such agreement and paid all the workmen's compensation benefits and settled with Sanchez. This conformed with the contractual agreement and arrangement between Leggett and Pruett. The contract arrangement contemplated that each employer would be responsible for his respective employee and there was no further agreement made between either Leggett or Pruett prior to the occurrence made the basis of the law suit. If the terms and conditions of the verbal agree-ment between Pruett and Leggett are not established in a subsequent trial as a matter of law, then a factual determination must be made in order for the trial court to apply the rule laid down in Producers Chemical Company v. McKay, supra.

■ Pruett and Leggett both admit that they had an established oral agreement which was carried out subsequent to Sanchez's injury. Pruett's insurance carrier did in fact provide medical care and workmen's compensation benefits to Sanchez and made a final settlement with him. Leggett did not file anything with the Industrial Accident Board, never made any contention that Sanchez was his employee either temporarily, loaned or on a permanent basis until after the suit was filed. We hold that from the undisputed facts, interpreted most favorably in favor of the appellant Sanchez and National Surety Corporation, they established the existence of a contract between Pruett (as a general employer) and appellee Leggett for the benefit of appellant Sanchez. The provisions of the contract between Pruett and

---

surance would cover my employees and that his insurance would cover his employees. It was my decision as to which particular man to send out on the job and in this particular case on the 29th day of October, 1967, when Benjamin G. Sanchez was injured, he was one of my employees that was directed to go. This decision as to which men I directed to work as my employee was not up to Mr. Leggett or any of his supervisors.

Mr. Leggett's insurance carrier did not provide any benefits to Benjamin G. Sanchez and all of the benefits provided in the form of medical payments, hospital services, doctors' bills, etc., were paid by the National Surety Corporation, which carried my Workmen's Compensation Insurance. National Surety Corporation is my Workmen's Compensation carrier also paid all of the Workmen's Compensation running benefits to Benjamin G. Sanchez and made a lump sum settlement with him. This conformed with my contractual agreement and arrangement with Kenneth R. Leggett concerning the fact that his employees were his employees and that my employees were my employees. At no time did Mr.

Kenneth R. Leggett or myself ever contemplate that the services rendered by my said employees were to be on anything other than a temporary nature and at all times the ultimate control and direction of such employees was up to me. This is the type of business that I engage in and during the course of a year, numerous employees are set out in a multitude of various places for temporary work where such employees might possibly be under the supervision of some one else.

Neither Mr. Kenneth R. Leggett nor myself ever had any type of contract on October 29, 1967, or prior thereto that any of my employees were to be considered a loaned servant or a temporary employee of Mr. Kenneth R. Leggett. To the contrary, the agreement, though verbal in nature, was that each of us would maintain control of our own employees and in the event of any accident or other unforeseen circumstance that such employees would be considered the employee of either myself, as the one in charge, or of Mr. Kenneth R. Leggett, if it happened to be one of his men."

Leggett were such that Pruett was obligated to furnish workmen's compensation insurance benefits to his employee Sanchez. This he complied with. Sanchez, by virtue of such contractual relationship and as beneficiary thereof, received the compensation benefits from National Surety Corporation. Leggett sat back and accepted the benefits thereof and did nothing until the filing of this suit. Leggett cannot now by virtue of such contractual relationship deny the existence of such contract upon which Sanchez and National Surety Corporation relied and attempt to avoid liability by contending that Sanchez was a *loaned or temporary servant.* It has been appropriately stated by the Supreme Court of Texas in Fort Worth Lloyds v. Haygood, 151 Tex. 149, 246 S.W.2d 865, that:

> "It is to be remembered that in an appropriate case on an injury being received by an employee covered by the Compensation Act, he is given the option of (1) proceeding against the third party tort-feasor free and untrammeled by any right of subrogation on the part of anyone and with full and free direction and control of his cause or (2) *he may receive compensation from his employer's compensation carrier.* By choosing this second remedy, the employee, or his representatives, bring into play the law which subrogates the compensation carrier to the employee's rights against the third party tort-feasor. *It is a choice which the employee must make,* and no other person, except he can cause the subrogation to come into being, and affect his rights against the third party tort-feasor. He is under no compulsion as to which option he chooses, but he makes his choice voluntarily and freely and with full knowledge of the legal effect of his choice." (Emphasis supplied)

■ Sanchez elected, within the provisions of the workmen's compensation law, to receive compensation from his employer's compensation carrier. Leggett is estopped to deny the existence of such contract. One who accepts the benefits of a contract must also assume its burdens and is estopped from denying liability thereunder. Evons v. Winkler, 388 S.W.2d 265 (Tex.Civ.App.—Corpus Christi, 1965, n. r. e.); Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892 (1960).

■ Leggett asserted in his pleadings that Sanchez' sole remedy was under the Workmen's Compensation Act. For this to be true the summary judgment proof must have shown that as a matter of law, plaintiff was an employee of Leggett within the meaning of the Workmen's Compensation Act; that Leggett had workmen's compensation insurance in effect at the time of the accident; and that Sanchez was a beneficiary of such insurance. The summary judgment proof did not establish this as a matter of law.

■ The evidence is uncontradicted however, that Leggett's foreman directed Sanchez as to what he should do on the day of the accident. While actual exercise of control may be, and often must be looked to, in order to determine the right of control of the employee, such exercise of control is only evidentiary. Leggett and Pruett were in the same kind of business and each used the other's employees. The Supreme Court has made it clear that the ultimate test which determines a master-servant relation is the "right of control". Where there is a contract, written or oral, the existence of a loaned employee relationship is primarily a question of contract between the general employer and the special employer. J. A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327 (Tex.1968) and Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex.1963). In cases where there is no express contract, or where the terms of the employment are indefinite, the exercise of control, though evidentiary only and not the ultimate test, may be the best evidence available in determining the right of control. Newspapers, Inc. v. Love, 380 S.W.2d 582, 590 (Tex.1964). Stimson

v. Aetna Insurance Company, 440 S.W.2d 108, 111 (Tex.Civ.App.—Dallas, 1969, n. w. h.). See Continental Insurance Company v. Clark, 450 S.W.2d 684 (Tex.Civ. App.—Tyler, 1970, n. r. e.) and cases cited therein.

Although the summary judgment proof shows only that Leggett's foreman did in fact exercise some control over Sanchez, the proof did not establish as a matter of law that Leggett's foreman had the right to control Sanchez.

The judgment of the trial court is Reversed and this cause is remanded for trial on its merits.

Reversed and remanded.

SHARPE, J., concurs in the result.