**Benjamin G. SANCHEZ, Appellant,**

v.

**Kenneth R. LEGGETT dba Leggett Welding & Construction Company, Appellee.**

**No. 726.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 30, 1972.

Rehearing Denied Dec. 14, 1972.

384

---

Utter, Chase, Cartwright & Bennett, Carl C. Chase, Allison, Maddin, White & Brin, Raul Garcia, Corpus Christi, for appellant.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, W. N. Woolsey, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

The appellant Benjamin G. Sanchez, brought suit against Kenneth R. Leggett, d/b/a Leggett Welding & Construction Company for damages by reason of personal injuries sustained as a result of the negligence of one of Leggett's employees. The case was tried before a jury where Sanchez established negligence on the part of Leggett, proximate cause resulting from such negligence, and clear findings of no contributory negligence on the part of Sanchez. The jury awarded damages to Sanchez for personal injuries in the amount of $58,995.55.[1] The jury, however, found that Sanchez was the borrowed employee of

Leggett. As a result of such finding, the trial court entered judgment that Sanchez, as well as the intervenor,[2] take nothing.

Pruett and Leggett operated separate businesses that provided services to major and independent oil companies in and around Beeville, Texas. Pruett and Leggett were in the same type of business and each used each other's employees. This type of employment contemplated sending employees when needed at various times to different locations to work for one employer or the other. It was the practice of the respective employees of Pruett and Leggett to take direction and supervision from the other general employer. Pruett and Leggett had entered into an oral agreement whereby they agreed that if either of them became shorthanded they could request the temporary service of one or more of the other's general employees. The decision to grant the request would rest with the employer to whom the request was made.

On October 29, 1967, the plaintiff Sanchez (the general employee of Pruett) sustained serious personal injuries while engaged in cleaning a "heater treater" on an oil field lease while working for Leggett. Leggett had contracted to do the cleaning job. Because of a shortage of his employees, Leggett contacted Pruett and asked him to furnish two workers to participate in the cleaning operation. On the morning of the 29th, Leggett's foreman picked up Sanchez and took him to the jobsite. After they arrived, Leggett's fore-

---

1. The jury found: (1) that the defendant, Leggett, was negligent in using a pickup truck to pull the rope and basket at and immediately prior to plaintiff's injury, which was (2) a proximate cause of plaintiff's injury; (3) that the defendant, Leggett, was negligent in failing to tie down or guy down the heater-treater in question at and immediately prior to the plaintiff's injury and (4) found it to be a proximate cause; (5) that the defendant was negligent in pulling the heater-treater off the foundation at and immediately prior to the plaintiff's injury; (6) that the above action was negligence, and (7) was a proximate cause of plaintiff's injury; (8) that the plaintiff did not fail to keep a proper lookout for his own safety; (9)

not answered; (10) that the plaintiff did not fail to keep the basket from hanging on one of the flanges of the heater-treater; (11) and (12) not answered; (13) the borrowed employee issue (see footnote 3), and (14) found damages proximately caused by defendant's negligence to the plaintiff in the total sum of $58,995.55.

2. National Surety Corporation intervened asserting a subrogation interest for workmen's compensation benefits that they paid to Sanchez on behalf of plaintiff's general employer L. H. Pruett, d/b/a Pruett's Lease Service. They are also appellants.

man told Sanchez to clean out the heater. He and another man were placed in a mobile type basket which was attached to a pickup truck. While working on the heater it toppled over, killing the fellow worker and seriously injuring Sanchez. The National Surety Corporation (intervenor) carried insurance on Pruett's employees. They paid workmen's compensation to Sanchez under the policy it had with Pruett. Leggett's workmen's compensation carrier made no attempt to pay Sanchez. It was only after Sanchez sued Leggett that Leggett and his insurance carrier claimed that Sanchez was the employee (borrowed) of Leggett.

Pruett and Leggett's oral contract was undisputed. It in no way affected the general conditions of the employment that each had with its respective employees, that is, each employer paid the salary, withholding taxes, social security, vacation, etc. of his general employee. The agreement encompassed arrangements for temporary labor and equipment on an irregular basis. The agreement was that the general employer (either Pruett or Leggett) whoever was providing the temporary help, had the right to determine which employee was to be sent to a job and the other employer had the right to accept or reject the employee. Both Pruett and Leggett carried their own workmen's compensation insurance and each specifically agreed that should injury occur to any employee, the employer in whose general employment the injured employee belonged would be responsible for notification and payment of workmen's compensation benefits.

3.  SPECIAL ISSUE NUMBER 13
    Do you find from a preponderance of the evidence that while engaged in cleaning the heater treater Benjamin Sanchez was a borrowed employee of Kenneth Leggett?
    A "borrowed employee" is one who, while in the general employment of one employer, is subject to the right of another employer or his agents to direct and control the details of the particular work inquired about and is not merely cooperating with suggestions of such other employer.

Appellant poses the question to this Court as its principal point of error. Did the trial court err in submitting Special Issue No. 13[3] to the jury in view of the undisputed evidence of a direct contract between Sanchez's general employer (Pruett) and the defendant (Leggett) that Sanchez was Pruett's employee at the time of his injury? Sanchez contends that with full knowledge of the details of the employment relationship with regard to the men being worked by each respective employer, that, at the time of Sanchez's injury, and with full knowledge of the details of the type of employment undertaken, appellee Leggett and Sanchez's employer Pruett had entered into a contract the terms of which are undisputed, which provided that in the event of an injury on the job where one employer was working the other employer's man, that for the specific purpose of injury occurring on that job to that employee, then in that event, such employee for the purpose of that injury would be considered as an employee of his general employer. The general employers agreed that insurance would be carried in this regard.[4]

Appellee Leggett testified that "My (insurance) company would take care of my employee and your (insurance) company would take care of yours." Appellants point to specific excerpts in the testimony to substantiate their position. Leggett tesfied:

"Q  .  .  .  But you consider him (Sanchez) to be a Pruitt man, right?

A  Right.

Answer "We do" or "We do not."
Answer: we do

4.  See Sanchez v. Leggett, 463 S.W.2d 517, for a full discussion of the facts of this case including this Court's discussion of estoppel which was rejected by the Supreme Court in Leggett v. Sanchez, 468 S.W.2d 63 (Tex.Sup.1972). There was no point of error or special issue on estoppel in this case, however.

·Q And at the time of the accident he was a Pruitt man?

A Right."

\* \* \* \* \* \*

"Q Let me put it this way: Was he (Sanchez) your general employee?

(Leggett) A No.

Q There is no doubt in your mind about that?

A No doubt in my mind.

Q Was he Mr. Pruitt's general employee?

A Yes."

There was no evidence that the parties to the contract, appellee Leggett or appellant Sanchez, or his employer Pruett, had made a specific agreement that Sanchez would or would not be considered Leggett's borrowed employee.

The undisputed evidence shows that Sanchez was treated as Pruett's employee before the injury, at the time of the injury and after the accident, not only by Leggett and Pruett but also by Leggett's and Pruett's insurance carrier as well. There was no evidence that Leggett and Pruett had changed their agreement in any manner by virtue of the opposite employer having the right to control or the employee of receiving instructions and directions from the opposite employer.

"Q All right, sir. Now, Mr. Leggett, you don't know what a loaned servant is or didn't when you made this agreement with Mr. Pruitt. You didn't know what a loaned or temporary servant was; the law or theory behind it, did you?

A No."

The specific contract settles the appellant's status as to whose general employee he was at the time of the injury. However, appellee contends that the factual consideration relating to the right of con-trol, supervision and direction in the details of the work, are decisive.

In this respect appellee argues that the undisputed evidence in the case shows that Leggett had the right to control Sanchez in the details of performance of the work he was doing at the time of the injury and this right of control is the only test where the contract is silent in this regard; or at least there is a fact issue as to whether or not Leggett had the sole right to control Sanchez in the details of the performance of his work.

Appellee Leggett refers us to the following testimony of Leggett:

"Q . . . When Benjamin Sanchez was out there on that job, working under Joe Conway, (Leggett's foreman) who had the right to tell Benjamin Sanchez how to do the work that he was doing?

A Joe Conway."

\* \* \* \* \* \*

"Q (to Mr. Leggett) All right. Now, did you have any agreement or understanding with Mr. Pruitt as to who had the right to control your respective employees, like Pruitt's general employee when he was on your job, or your general employee when he was on Pruitt's job. . . . . .

Q Did you have any agreement with respect to that?

A Yes.

Q What was that agreement?

A That when I get a man up there from him I was fully in charge, or my foreman.

If he got one of mine, he was fully in charge.

Q All right. Now, when you say 'fully in charge', do you mean by that fully in charge of the right to con-

trol that man in the details of the performance of the work?

A Instructing him of the work and what to do and how to do it . . . ."

\*  \*  \*  \*  \*  \*

"Q And the other part of that agreement was: that when his man was on your job he was subject solely to your control or that of your foreman?

A Right."

Mr. Pruett, Sanchez's employer, was questioned:

"Q Now, in regards to who had the right to control Mr. Sanchez, for example, and in particular, while he is on the job with Mr. Leggett; who did have the right to control him in the manner of performing the job at hand, the details of performing that job?

A The foreman that was in charge of the job.

Q Mr. Leggett's foreman?

A On the job, yes. That's right. At the time it was Joe Conway.

Q Would the same be true on one of your jobs, if Mr. Leggett's man happened to be on your job?

A Absolutely."

This Court stated in Sanchez v. Leggett, 463 S.W.2d 517 (Tex.Civ.App.—Corpus Christi 1971, n. r. e.):

"It is clear Texas law that where there is a contract between the general and special employer which resolves the question of the employment status, then the factual consideration of the right to control the details of the work is unnecessary . . . ." Citing Producers Chemical Co. v. McKay, 366 S.W.2d 220 (Tex.Sup. 1963).

Although it is undisputed that the two employers had a contract that determined the employment status as between themselves and their employees, the contract did not contain the "magic" provision that determined the question of the "right to control" that borrowed employee. Therefore, where the contract is silent in this respect, then the solution of the question rests in the "right of control" of the manner in which the employee performs the services necessary to accomplish his ultimate obligation. The agreement between Pruett and Leggett covering workmen's compensation insurance benefits for their respective employees did not go far enough to determine the question of a borrowed employee. The "right of control" was left open to what actually took place on the job. If the general employee of one employer is placed under the control of another employer as to the manner of performing his services, he becomes his special or borrowed employee. If the employee, on the other hand, remains under control of his general employer in the manner of performing the services, or if the employers had a contract that settles the question that the right of control shall always remain in the general employer irrespective, then that employee remains the employee of the general employer. Restatement of the Law of Agency, Vol. 1, § 227; 35 Am.Jur., Master and Servant, 970, § 556, pp. 284–291.

We hold that since the contract covering this particular aspect of the employment was silent as to the "right to control" Sanchez, then a factual question was raised as to whether Sanchez was the borrowed employee of Leggett. This the jury determined adversely to the plaintiff Sanchez. Newspapers, Inc. v. Love, 380 S.W. 2d 582 (Tex.Sup.1964). Appellant's points of error are overruled.

Judgment of the trial court is affirmed.

SHARPE, Justice (concurring).

I concur in the result.