**ASSOCIATED INDEMNITY COMPANY, Appellant,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellee.**

No. 18556.

Court of Civil Appeals of Texas, Dallas.

May 8, 1975.

Rehearing Denied May 22, 1975.

Richard Bernays, Touchstone, Bernays & Johnston, Dallas, for appellant.

Henry Stollenwerck, Dallas, for appellee.

GUITTARD, Justice.

Hartford Accident & Indemnity Company, after paying a workmen's compensation claim, sued Associated Indemnity Company, alleging that the payment was made for Associated's benefit because the loss was covered by Associated's policy. Both par-

ties moved for summary judgment. The trial court denied Associated's motion and granted Hartford's, and Associated appeals.

The question presented is: May the workmen's compensation carrier of a contractor supplying temporary labor, after accepting premiums collected by the contractor from its customers, and after paying a claim to an employee injured when working under the direction and control of a customer, recover the amount of such payment from the customer's regular workmen's compensation carrier? We answer this question in the negative, and, accordingly, we reverse the trial court's judgment and render judgment in favor of Associated.

The facts are undisputed. Hartford issued a policy of workmen's compensation insurance to Greene's Temporaries, Inc., a contractor engaged in the business of supplying temporary employees to industrial concerns. The injured workman in question was hired by Greene's, and was assigned temporarily to Frito-Lay Company. At the time of his injury, he was working at Frito's premises under the direction of Frito's foreman. The contract between Frito and Greene's was oral. Frito agreed to pay Greene's a fixed hourly charge for the workers supplied by Greene's. Out of this charge, Greene's agreed to pay all wages and social security and withholding taxes, and to relieve Frito of all expense and paperwork concerning the temporary employees. Greene's also agreed to furnish workmen's compensation insurance and to pay the workmen's compensation insurance premiums. Greene's paid the employees hourly wages based on the time they were actually at work for Frito. Out of the difference between the hourly charges paid by Frito and the hourly wages paid to the employees, Greene's paid various expenses, including workmen's compensation insurance premiums on the policy issued by Hartford. These premiums were measured by the total payroll of Greene's employees for the time they were working for Greene's customers. Frito had no expense with respect to the temporary employees other than the hourly charges it paid to Greene's. Frito's workmen's compensation insurance was carried by Associated, and Frito's payroll, by which its workmen's compensation premiums were measured, did not include any of the temporary workers supplied by Greene's. This arrangement was typical of Greene's operations, and also, apparently, of other labor contractors supplying temporary employees.

The injured workman in question originally made his claim against Associated, but, on receiving letters from Associated and Frito to the effect that he was Greene's employee, he filed the claim against Hartford. Hartford made no denial of the coverage, and after appeal to the district court from a compensation award, Hartford made a voluntary settlement. This settlement was made in accordance with a general practice of Hartford to pay claims of Greene's employees for injuries sustained by them while working under the direction and control of Greene's customers, such as Frito.

After settlement of the workmen's compensation claim, the claimant filed a tort action against Frito, in which Hartford intervened and asserted its subrogation rights. Hartford also impleaded Associated as a third-party defendant and alleged that Associated owed the compensation which Hartford had paid. The trial court denied all recovery, and on an earlier appeal, this action was affirmed with respect to Frito on the ground that Frito was protected as an employer by workmen's compensation insurance. Waldroup v. Frito-Lay, Inc., Docket No. 4643 (Tex.Civ.App.—Eastland, August 10, 1973) (unreported). The claim against Associated was remanded, and both parties filed motions for summary judgment, which are before us on this appeal.

Associated contends that Greene's could properly agree to carry workmen's compensation insurance on temporary employees

furnished to Frito because under the circumstances of this case, such employees must be considered employees of both Greene's and Frito. In support of this dual-employment theory, Associated cites cases from other states involving tort claims of temporary workers against their temporary employers. In such cases the temporary employers have been held to be protected by workmen's compensation statutes. Renfroe v. Higgins Rack Coating & Manufacturing Co., 17 Mich.App. 259, 169 N.W.2d 326, 329 (1969); St. Claire v. Minnesota Harbor Service, Inc., 211 F.Supp. 521, 526 (D.C.Minn.1962).

▮ Hartford takes the position that this dual-employment theory is inconsistent with Texas decisions. It points out that Texas affords a temporary employer the protection of the Workmen's Compensation Law, if he is a subscriber, by applying instead the borrowed-servant doctrine. According to this doctrine, the injured workman is held to be the employee of the employer who had the right of control over the details of the work at the time of the injury. Process Engineering Co. v. Rosson, 287 S.W.2d 511, 514 (Tex.Civ.App.—Galveston 1956, no writ); cf. Sanchez v. Leggett, 463 S.W.2d 517, 520 (Tex.Civ.App.—Corpus Christi), writ ref'd n. r. e. per curiam, 468 S.W.2d 63 (Tex.1971), on subsequent appeal, 489 S.W.2d 383, 387 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). The employer who had that right of control is protected from common-law liability, and his workmen's compensation insurer is liable for statutory benefits. Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217, 221 (1949). Accordingly, even though an injured workman was carried on the payroll of a subscriber, and even though that subscriber may have paid insurance premiums on the workman's wages, he is held not to be the employee of the subscriber for the purposes of the Workmen's Compensation Act if he was temporarily subject to the right of control

of another employer at the time of the injury. United States Fire Insurance Co. v. Warden, 471 S.W.2d 425, 428 (Tex.Civ.App. —Eastland 1971, writ ref'd n. r. e.); Employers Casualty Co. v. American Employers Insurance Co., 397 S.W.2d 292 (Tex.Civ. App.—Amarillo 1965, writ ref'd n. r. e.).

None of the Texas cases decide the question of whether a labor contractor supplying temporary employees may make a valid contract with its customer that it will carry workmen's compensation insurance on the employees while they are working under the control of the customer. Under the dual-employment theory advanced by Associated, such a contract would be valid and effective, and, consequently, the workmen's compensation policy issued to the contractor would provide coverage to the employees hired by the contractor, even though they are entirely subject to the control of the customer concerning the details of their work. On the other hand, strict application of the right-of-control test, as advocated by Hartford, would result in a holding that such a contract is legally impermissible because it is contrary to the public policy of this state as declared by the decisions of Texas courts under the Workmen's Compensation Act.

▮ We do not decide this question because even if we reject the dual-employment theory and apply the right-of-control test, no right to a subrogation recovery has been established. Subrogation is a remedy which courts of equity employ to prevent unjust enrichment. It is said to be based on principles of "natural justice" and is not applied if it would work injustice. Vasser v. City of Liberty, 50 Tex.Civ.App. 111, 110 S.W. 119, 121 (Galveston 1908, no writ). Neither is it employed to relieve a party of the consequences of wrongdoing in which he participated. German Bank v. United States, 148 U.S. 573, 581, 13 S.Ct. 702, 37 L.Ed. 564 (1892); Padgett v. Young County, 204 S.W. 1046, 1054 (Tex.Civ.App.—Fort Worth 1918, writ dism'd); People v. Metro-

politan Casualty Insurance Co., 339 Ill.App. 514, 90 N.E.2d 565, 567 (1950).

■ The subrogation recovery sought is not supported by any showing of unjust enrichment. If Hartford is correct in its contention that the arrangement between Greene's and its customers was legally impermissible, Hartford has had the benefit of that arrangement to the extent of its receipt of premiums which Greene's included in the charges to its customers. Since these premiums were measured by the payroll of the temporary employees while working for Greene's customers, they should have been paid to Associated and other insurers if, as Hartford now contends, their policies actually covered the risks. Out of these premiums Hartford paid claims, including the claim in question. Having received the benefit of the arrangement, Hartford should not, in equity and good conscience, be permitted to shift its burden to Associated, to whom in this instance Hartford admits that the premiums were rightfully due. Such a recovery would produce rather than prevent unjust enrichment.

■ Moreover, Hartford is not entitled to recover a payment made pursuant to an arrangement which it now acknowledges to be legally impermissible. If that arrangement was invalid, the facts are analogous to an executed illegal transaction. In such cases courts ordinarily do not lend their aid, but leave the parties as they find them. Stone v. Sterling Mutual Life Insurance Co., 127 S.W.2d 345, 347 (Tex.Civ.App.— Galveston 1939, no writ); and see Morrison v. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908, 909 (1941). Consequently, we hold that the trial court erred in granting the remedy of equitable subrogation.

■ Hartford cannot avoid this result by pleading ignorance. It is charged with knowledge of the facts concerning coverage under its policy. See Southern Underwriters v. Jones, 125 S.W.2d 393, 395 (Tex.Civ. App.—Beaumont 1939, writ dism'd jdgmt.

cor.). It had access to the relevant information by virtue of its statutory right of free access to its policyholder's premises for the purpose of making and enforcing rules for prevention of injuries to the workmen covered by its policy. Tex.Ins.Code Ann. art. 5.76 (Vernon 1963). Had it exercised that right, it would have learned, if it did not already know, that none of the work of the employees by whose wages its premiums were measured was actually done under the direction and control of its policyholder, but that all of such work was done under the direction and control of the policyholder's customers. Thus it would have discovered that it was accepting premiums for risks which, it now asserts, were not covered by its policy. A reasonable inquiry would have disclosed further that the policyholder normally dealt with customers on the basis of an agreement to provide workmen's compensation insurance on the temporary employees supplied, that the policy in question was obtained for that purpose, and that the charges paid by the customers included amounts to cover the premiums on that policy. With this information readily accessible, Hartford must be treated as a participant in the operations of its policyholder.

■ We recognize decisions holding that if one insurer pays a loss which it later discovers to be within the coverage of another insurer's policy rather than its own, receipt of premiums is not in itself sufficient to defeat equitable subrogation. See Employers Casualty Co. v. American Employers Insurance Co., 397 S.W.2d 292, 296 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.); Arrow Coach Lines v. Pennsylvania Casualty Co., 234 S.W.2d 883, 888 (Tex.Civ. App.—Austin 1950, writ ref'd n. r. e.). That rule, however, has not been applied in circumstances comparable to this case. Here the receipt of premiums for a risk which Hartford now contends that its policy did not cover was not fortuitous or unintended, but was an integral part of the

policyholder's method of doing business, of which Hartford must be charged with notice, for the reasons stated.

 Since the facts are fully developed and are undisputed, our duty is to render the judgment which the trial court should have rendered. Texas Rules of Civil Procedure, rule 434. Accordingly, we reverse the judgment for Hartford and render judgment for Associated, sustaining its motion for summary judgment and denying all recovery by Hartford against Associated.

Reversed and rendered.