BUCYRUS–ERIE CO., Appellant,

v.

FOGLE EQUIPMENT CORP., Appellee.

No. C14–85–395–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 15, 1986.

Rehearing Denied June 12, 1986.

Roger R. Wright, Jr. and Jo Ann Ray, Houston, for appellant.

Dan Ryan and John C. Marshall, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This appeal arises from a suit brought by Fogle Equipment Corporation, ("Fogle") against Bucyrus-Erie Company, ("Bucyrus") for property damages sustained as a result of the negligence of Eleodoro Veliz. Veliz is an employee of Fogle but at the time of the fire giving rise to this suit, Veliz was involved in modifying a Bucyrus crane under the supervision of a Bucyrus employee. The jury found that for purposes of the crane modification project, Veliz was the borrowed-servant of Bucyrus and awarded Fogle $151,800.59 in damages.

In three points of error, Bucyrus contends that the trial court erred in overruling its motion for new trial because the evidence is insufficient to support the jury's finding that Veliz was the borrowed-servant of appellant on the occasion in question and that the trial court erroneously instructed the jury as to borrowed-servant status. We affirm.

In its first point of error, Bucyrus complains that the jury's conclusion that the negligent employee was a borrowed-servant is not supported by the evidence. Guided by familiar standards of review, we are required to affirm the judgment unless we conclude after considering *all* the evidence that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong. *Southwestern Bell Telephone Co. v. Baker*, 650 S.W.2d 467, 469 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

Appellee Fogle distributes cranes manufactured by appellant Bucyrus. The record shows that one of the models manufactured by Bucyrus required extensive modifications. These cranes had been distributed not only in Texas but across the country. Consequently, the project was not initiated by Fogle to conform to customer specifications but by Bucyrus in recognition that the cranes as distributed were unsatisfactory. Bucyrus' engineering department printed a checklist and accompanying blueprint for the necessary modification. The evidence also indicates that the closest Bucyrus plant to Fogle is located in Evansville, Indiana. Consequently, rather than returning the crane to Indiana, Fogle and Bucyrus entered into an agreement, also initiated by Bucyrus, to modify the crane on Fogle's property in Harris County using Fogle's personnel and equipment. Fogle supplied a welder, Eleodoro Veliz; and Bucyrus sent Dennis Orten, a service representative, to Fogle's premises to supervise the modification. The men worked together for a few days without incident. On Saturday, while both men were on break, a fire broke out causing extensive damage to the crane. It is not disputed

that Veliz's negligence caused the fire that severely damaged the crane. It is disputed whether Veliz was an employee of the general employer, Fogle, or an employee of the special employer, Bucyrus, for the purpose of the modification work.

The borrowed-servant concept has been frequently applied by Texas courts. *See, e.g., Sparger v. Worley Hospital, Inc.,* 547 S.W.2d 582, 583 (Tex.1977). Although the numerous appellate decisions are illuminating, the question of whether a general employee of one employer has become the special or borrowed-employee of another employer remains a difficult question. The critical consideration is which employer had the "right to control the details of the work." *Dodd v. Twin City Fire Insurance Co.,* 545 S.W.2d 766, 768 (Tex.1977). Of course, where both employers are operating under a contract *expressly* assigning the right to control, a court can dispose of the borrowed-servant issue without the necessity of considering the facts and circumstances of the project. *Producers Chemical Company v. McKay,* 366 S.W.2d 220, 226 (Tex.1963); *Sanchez v. Leggett,* 489 S.W.2d 383, 387 (Tex.Civ.App.—Corpus Christi 1972, no writ).

▮ Bucyrus contends that the distribution contract under which the crane was manufactured and sold to Fogle disposes of the "right to control" issue. Articles III and IV of the "Distributor Agreement" provides in pertinent part:

ARTICLE III. DISTRIBUTOR'S RIGHTS AND ACTIVITIES

. . . . .

B. Sales and Service
2) Distributor *shall* provide full, and complete SERVICE ... *DISTRIBUTOR'S primary responsibility* to provide SERVICE *shall continue regardless of any general supervision of service problems by COMPANY, or any assistance in connection with SERVICE that may be rendered by COM-*

*PANY* to Distributor ... (emphasis added);

. . . . .

ARTICLE IV. COMPANY'S RESPONSIBILITY

. . . . .

B. Assistance
COMPANY shall afford DISTRIBUTOR, ... the personal *cooperation and assistance* of the technical sales and service staffs of COMPANY ... (emphasis added).

Bucyrus asserts that under the above provision it agreed only to afford "cooperation and assistance" to Fogle and that Fogle had the right, and even the duty, to exercise control over its employees during equipment modifications. After carefully reviewing the distributor contract, however, we have concluded that it does not *clearly* and *expressly* address the right to control issue. Particularly here, where major, complex modifications are initiated by the manufacturer with unusual control vested in its representative, it is essential that the "right to control" responsibility be specifically spelled out in the contract before it may be said to be dispositive. *Producers Chemicals, supra* at 226. Therefore, we must now review the existing legal standards and apply them to the particular facts and circumstances of this modification project to determine if Bucyrus assumed control of Veliz's welding activities to such a degree that it became liable for his negligence.

▮ In *Producers Chemical, supra,* the Supreme Court listed six factors as appropriate to consider in determining the right to control issue: (1) nature of the general project; (2) nature of the work to be performed by the machinery and employees furnished; (3) length of the special employment; (4) type of machinery furnished; (5) acts representing an exercise of actual control; and (6) right to substitute another operator of the machine. A complete reading of *Producers Chemicals* indicates that these factors were not meant to be exhaustive, but instructive.

As to the nature of the project, the crane modification was initiated by Bucyrus. The necessary work to be performed was complex and detailed thereby requiring Bucyrus' continued supervision. The welder, Veliz, worked from blueprints supplied by Bucyrus and the project required a few days of continuous work. The evidence also shows that Bucyrus' service representative, Orten, exercised constant control over Veliz in that he instructed him when to arrive for work and exactly how to proceed with the project. Orten testified that he was "in charge" of the modification. Veliz likewise testified that he could not make any welds without first consulting Orten. Furthermore, there is some evidence that Bucyrus had the right to substitute the welder with another Fogle employee. Finally, there is evidence that Veliz expected to receive his pay check from Fogle but that Bucyrus had agreed to reimburse Fogle for the use of its personnel, premises and equipment. We find these evidentiary elements supportive of the jury verdict.

The evidence weighing against the jury's verdict is that Fogle provided the employee, facilities and equipment for the project and that Veliz testified that he conducted himself in accordance with Fogle's safety rules. *But see, J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327, 334 (Tex.1968).

After reviewing *all* the evidence we cannot say the jury's finding that Veliz was a Bucyrus borrowed servant is so against the great weight and preponderance of the evidence so to be manifestly wrong and unjust. The previously enumerated evidence in support of the verdict includes testimony by both the welder and supervisor that the latter, a Bucyrus employee, was in control of the details of the project. Moreover, the project stretched over a period of days and was complex in character. Appellant's first point of error is accordingly overruled.

■ Bucyrus' second and third point of error concern the trial court's refusal to further instruct the jury on the borrowed-servant issue. Special Issue No. 1, as submitted to the jury, read as follows:

Do you find from a preponderance of the evidence that while engaged in work on the crane, Eleodoro Veliz was a borrowed employee of Bucyrus Erie?

A "borrowed employee" is one who, while in the general employment of one employer, is subject to the right of another employer or his agents to direct and control the details of the particular work inquired about and is not merely cooperating with suggestions of such other employer.

Answer "We do" or "We do not."

The jury answered "We do."

Bucyrus first contends that the trial court erred in not giving the same instruction as that given by the trial court in *Carr v. Carroll Co.,* 646 S.W.2d 561, 563 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) where the jury was instructed that:

A "BORROWED EMPLOYEE" is one who, while in the general employment of one employer, is subject to the right of another employer, or his agents, to direct and control the details of the particular work inquired about, and is not merely cooperating with suggestions of such other employer. *The fact that the general employer may have permitted a division of control over the employee does not necessarily mean that the general employer has surrendered the right of control.* (emphasis added.).

Bucyrus asserts that the emphasized portion of the requested instruction was necessary to the jury's understanding of the technical concept of borrowed-servant and that the court's refusal to give the instruction constituted harmful error.

We hold the trial court did not err in refusing Bucyrus' requested special issue. First, the submitted special issue was taken verbatim from the Texas Pattern Jury Charges. Additionally, Bucyrus has cited no authority holding that an instruction on borrowed-servant must include mention of division of control. Finally, it is well settled that a judgment will not be reversed because of a failure to submit various phases or different shades of the same issue. Tex.R.Civ.P. 279; *American Transfer &*

*Storage Co. v. Reichley,* 560 S.W.2d 196, 198 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

 Bucyrus also contends the trial court erred in refusing to instruct the jury on the elements that may be considered in determining borrowed-servant status. Bucyrus requested an instruction containing the several factors the Supreme Court enumerated in *Producers Chemicals, supra* as meriting attention in applying the "right to control" test. For the same reasons that we found no error in the trial court's refusal to submit an additional instruction on division of control, we also hold that Bucyrus' last argument must fail.

Bucyrus' second and third points of error are overruled and the judgment of the trial court is affirmed.