**Jose A. ZARATE and Maria Zarate, Appellants,**

v.

**BROWNSVILLE NAVIGATION DISTRICT, Appellee.**

No. 13–88–033–CV.

Court of Appeals of Texas, Corpus Christi.

March 16, 1989.

Rehearing Dismissed as Moot April 13, 1989.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

John William Black, Victor V. Vicinaiz, Wiech & Black, Brownsville, for appellants.

Roger W. Hughes, William L. Pope, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellee.

Before NYE, C.J., and BENAVIDES, and SEERDEN, JJ.

OPINION

BENAVIDES, Justice.

This is an appeal from a summary judgment granted in favor of appellee, Brownsville Navigation District.[1] Jose and Maria Zarate (appellants), brought an action against the district pursuant to the Federal Employers' Liability Act (FELA), seeking damages for injuries Jose Zarate sustained while working on a railroad project. On appeal, appellants present three points of error for review. We affirm the judgment of the trial court.

The record reflects that at the time Zarate was injured, he was employed by Stafford Railroad Construction Co. and was paid by that corporation. Zarate had been working for Stafford at various job sites for approximately one year prior to the accident. On March 16, 1983, Stafford en-

1. Appellee will hereinafter be referred to as "the district."

tered into a contractual agreement with the district wherein Stafford agreed to install 1000 feet of railroad track at a port located in Brownsville, Texas. Stafford assigned Zarate to work at the port, and approximately three weeks after he began working at the port, he injured his back.

Zarate testified in his deposition that his supervisor at the port was Felix Rodriguez, a Stafford employee. According to Zarate, Rodriguez was in charge of all the work at the port, and no one from the district ever supervised, directed, or told him how to perform his job. Zarate testified that on the day of the accident, Rodriguez told him to help a co-worker tie railroad ties onto the top of a trailer.[2] Zarate complied with Rodriguez' request and tied the railroad ties with chains, and then hung himself from the end of the chain to ensure that the chains were tight. Zarate injured himself while hanging from the end of the chain.

Zarate testified that all the equipment used on the job, including the trailer and the chains, were either owned or controlled by Stafford. Furthermore, he testified that he had done this type of work two to three times before and that he was not aware of any other way to tighten the chains. Appellants brought suit against the district claiming that it was negligent in failing to properly supervise or instruct Zarate.

Under FELA, every common carrier by railroad will be liable in damages to any person suffering injury while he is employed by such carrier for the injury resulting from the negligence of the carrier. *See* 45 U.S.C. §§ 51–60 (1976). Accordingly, in order to be entitled to recover, a plaintiff must show that the defendant is a common carrier by railand that his injuries occurred while he was employed by such carrier.

The district moved for summary judgment. The district contended that the evidence established as a matter of law that (1) it was not a common carrier by rail; (2) Zarate was not one of its employees; and

(3) it was not negligent. The trial court granted the district's motion for summary judgment without specifying the basis for its judgment; therefore, the judgment will be affirmed if the record supports the trial court's ruling on any one of the above theories.

It is well established that when reviewing the granting of a summary judgment, we must consider the summary judgment evidence in the light most favorable to the nonmovants and indulge every reasonable inference in their favor. *Wilcox v. St. Mary's University*, 531 S.W.2d 589 (Tex. 1975). The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law. *MMP Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). This may be accomplished by summary judgment evidence which shows that at least one element of the plaintiff's cause of action has been conclusively established against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957 (Tex. 1987).

By their second point of error, appellants claim the summary judgment evidence does not establish as a matter of law that the district was not a common carrier by rail. We agree.

■ Under federal law, a common carrier by rail, as used in FELA cases, means one who operates a railroad as a means of carrying for the public. *Mahfood v. Continental Grain Co.*, 718 F.2d 779, 789 (5th Cir.1983); *McCrea v. Harris County Houston Ship Channel Navigation District*, 423 F.2d 605, 608 (5th Cir.), *cert. denied*, 400 U.S. 927, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970). There are four factors which are considered to be of prime importance to the determination of whether a particular entity is a common carrier by rail:

> First-[whether there is] actual performance of a rail service, second-[whether] the service being performed is part of the total rail service contracted for by a

---

**2.** In his deposition, Zarate testified that the railroad ties had been loaded onto the top of a trailer, and he needed to tie them onto the

trailer so that they could be transported to another location.

member of the public, third-[whether] the entity is performing as part of a system of interstate rail transportation by virtue of a common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public, and fourth-[whether] remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

*McCrea,* 423 F.2d at 608; *Lone Star Steel Co. v. McGee,* 380 F.2d 640, 647 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967).

■ The summary judgment evidence, considered by the trial court and contained in the record now before us, consists of an affidavit by Jim Beaman, an officer and employee of the district; a contract between Stafford and the district; and Zarate's deposition. The record reflects that the only summary judgment evidence relied on by the district to establish that it is not a common carrier by rail, is Beaman's affidavit. In his affidavit, Beaman attests that "the district was not involved in and has not heretofore been engaged in the transportation of goods by railway via interstate commerce." The district contends that since appellants failed to rebut Beaman's affidavit, there is uncontroverted evidence that the district is not a common carrier as a matter of law. We disagree.

In *McCrea,* the Fifth Circuit applied the above-mentioned, four-part test and held that the Harris County Navigation District was not a common carrier because, in part, the evidence showed that the district owned no locomotives or cars, employed no typical railroad employees, operated no scheduled trains, and made no direct charge for movement by rail. Thus, the court concluded that such passive ownership of railroad property did not make the district a common carrier by rail. *McCrea,* 423 F.2d at 609.

In the case before us, the summary judgment evidence presented to the trial court is silent concerning the specifics of the district's railroad operations. As noted above, the district had the burden to establish as a matter of law that it was not a common carrier by rail. The mere attestation that the district did not engage in the transportation of goods by railway, does not establish it was not a common carrier by rail. We, therefore, sustain appellants' second point of error.

By their first point of error, appellants contend that the summary judgment evidence presented a question of fact concerning whether Zarate was an employee of the district.

As stated above, in order for appellants to have a cause of action against the district under FELA, Zarate must have been one of its employees. There are three ways a nominal employee of another can establish that he is an employee of a rail carrier for FELA purposes. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury; second, he could be deemed to be acting for two masters simultaneously; and third, he could be a subservant of a company that was in turn a servant of the railroad. *See Kelley v. Southern Pacific Co.,* 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498 (1974). Appellants contend that the evidence established that Zarate was either a borrowed servant or a joint employee of the district and Stafford.

■ The FELA does not use the terms "employee" and "employed" in any special manner. *Baker v. Texas and Pacific Railway Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959). Therefore, general federal law applies in order to determine whether one is an employee or servant at a given time. *Id.* The issue of whether an injured, nominal employee of a contractor can be the "employee" of a railroad under FELA is a question of fact for the jury, unless reasonable men could not reach different conclusions on the issue. *Id.* Federal law does not require that the railroad have full supervisory control, but rather it "requires that the railroad play a significant supervisory role as to the work of the injured employee." *Lindsey v. Louisville & Nashville Railroad Co.,* 775 F.2d 1322, 1324 (5th Cir.1985).

The fifth circuit has held that there are nine factors to be evaluated in determining whether one is a "borrowed servant" of another. *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988). They are as follows:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished the tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee.

*Id.* Although no one of these factors, or any combination of them is decisive, the issue concerning who has the power or the right to control another person in the performance of his work, has been considered the central issue in determining whether one is a "borrowed employee." [3] *Melancon*, 834 F.2d at 1244–45; *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1249 (5th Cir.1984); *Lindsey*, 775 F.2d at 1323. Similar factors are also considered enlightening when determining whether one is a joint servant of two parties. *See Kelley*, 419 U.S. at 323, 95 S.Ct. at 475; *Williams v. Pennsylvania Railroad Co.*, 313 F.2d 203, 209 (2nd Cir.1963).

In the instant case, the summary judgment evidence conclusively establishes, and it is uncontroverted, that the district did not actually control or direct Zarate's work. In fact, appellees do not assert that the district actually directed his work. To the contrary, Zarate in his deposition testified that district employees never supervised or directed him in the performance of his job. Likewise, Zarate testified that his employer was Stafford and that Stafford alone controlled the manner in which he worked.

Since the district never controlled Zarate, he could not have acquiesced to the district's control over him. Likewise, the evidence does not raise a fact issue that Stafford terminated its relationship with Zarate, or "lent" Zarate to the district. *See Melancon*, 834 F.2d at 1246. Furthermore, the evidence establishes that Stafford furnished all the equipment used, Stafford had the obligation to pay the employee, and Zarate had only been working at the port for approximately three weeks prior to the accident.

Appellants contend that certain provisions in the contract between Stafford and the district established that the district had the right to control the details of Zarate's work. More specifically, appellants contend that there was an agreement between Stafford and the district which provided that the district had the right to control the work, and thus, the district was subject to liability as Zarate's employer. We disagree.

---

**3.** Under Texas law a similar test is applied. Texas courts have held that in order to determine whether general employees have become special or borrowed employees of another, it must be determined who has the right to control the details of their work. *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963); *Bucyrus–Erie Co. v. Fogle Equipment Co.*, 712 S.W.2d 202, 204 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Sanchez v. Leggett*, 489 S.W.2d 383, 387 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). When a written contract between two employers expressly provides that one or the other shall have right of control, a court can easily dispose of the issue. *Sanchez*, 489 S.W.2d at 387. However, if the contract does not clearly and expressly address the right to control issue, the issue must be determined from "an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, and the right to substitute the employee." *Producers Chemical Co.*, 366 S.W.2d at 226; *Bucyrus–Erie Co.*, 712 S.W.2d at 204.

■ Appellants allege that the following provisions contained in the contract established the district's right to control:

(1) the district reserved the right to enter the property and inspect the work and to take possession of, or use, any completed or partially completed part of the work; (2) the district specified types and amount of insurance Stafford should carry; (3) the district specified the details of the project and required that the work must be inspected and approved by a district engineer and director; and (4) the district provided that Stafford employ only orderly, competent and skillful workmen, and that any workmen or supervisor whose work or attitude is not satisfactory shall be removed from the work when requested in writing by the district.

After carefully reviewing these provisions and the entire contract, we find that the contract does not raise a fact issue that Zarate was a borrowed or joint servant. The contract does not infer a right to control Zarate in the performance of the job, nor do the facts and circumstances establish or imply that the district had the right to control Zarate in the performance of his work. *Alday v. Patterson Truck Line, Inc.,* 750 F.2d 375 (5th Cir.1985).

To the contrary, the contract provides that Stafford agreed to furnish all supervision, labor, tools, equipment, supplies, and materials necessary to complete the work in a sound, workmanlike manner. Stafford further agreed that it would be responsible for the safety of its employees. The fact that the district could inspect the work and request the removal of an employee whose work or attitude was unsatisfactory, does not give it the right to control Zarate in the details of the work to be performed. These provisions merely give the district the right to reject work that was unsatisfactory and do not subject the district to liability as a master.

Appellants rely on *Pollard v. Missouri Pacific Railroad,* 759 S.W.2d 670 (Tex. 1988), for the proposition that such provisions in a contract between a landowner and an independent contractor can estab-lish that a landowner had the right to control the work of the independent contractor. While we are generally bound by the holdings in *Pollard,* the case now before us is distinguishable and *Pollard* does not control the issue before this Court.

In *Pollard,* the Texas Supreme Court held that in a premises liability case, a premises owner can be liable for injury to an employee of an independent contractor if the landowner had the right to control the work. *Id.* at 671. The Supreme Court held that a landowner owes a *duty* to an employee of an independent contractor if the landowner retains the right to control the work performed. *Id.* The court further held that if right of control over the work has a contractual basis, the fact that no actual control was exercised, will not absolve a premises owner of liability; therefore, it is the right of control, and not the exercise of control, which gives rise to a duty to see that an independent contractor performs the work in a safe manner. *Id.* The court held that *Pollard* was governed by *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985), which recognized an exception to the general rule that an owner or occupier of land does not have a *duty* to see that an independent contractor performs work in a safe manner. *Id.*

In *Redinger,* the court held that an owner has a *duty* to see that an independent contractor performs work in a safe manner if the owner retained the right to control of any part of the work. *Redinger,* 689 S.W. 2d at 418. However, the court held that "this rule applies when the landowner retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a *master. Id.*

The question in *Pollard* and *Redinger* was not whether an injured worker was an employee of a landowner, but whether the landowner owed a duty to the employee of an independent contractor. Here, Zarate brings an action under FELA and necessarily contends that he is the district's employee. Accordingly, the focus of our review is to see whether or not a fact issue is raised

concerning whether Zarate is a joint or borrowed servant of the district, not whether the district owed a duty to Zarate as a Stafford employee. The summary judgment proof does not raise a fact issue that the district had the power or right of control over Zarate in the performance of his work.

We find that the evidence presented to the trial court conclusively established that Zarate was not an employee of the district thereby defeating Zarate's FELA action. We overrule appellants' first point of error. Because of our disposition of appellants' first point of error, we need not address appellants' third point of error. Accordingly, we affirm the judgment of the trial court.