John J. MILLER, Appellant,

v.

Dr. Charles H. HOOD et al., Appellees.

No. 1025.

Court of Civil Appeals of Texas, Corpus Christi.

April 22, 1976.

Rehearing Denied May 13, 1976.

John H. Holloway, Houston, for appellant.

O. F. Jones, Victoria, W. T. McNeil, Vance, Vance & McNeil, Edna, for appellees.

## OPINION

BISSETT, Justice.

This is a medical malpractice case. Suit was instituted by John J. Miller ("Miller") sometime prior to February 1, 1971, against Dr. Charles H. Hood ("Dr. Hood"), Mauritz Memorial Jackson County Hospital ("Hospital"), Jackson County, Texas ("County") and James Childress ("Childress"), to recover damages for negligence in connection with his treatment while he was a patient in the Hospital. Miller died on March 18, 1971, and the suit was thereafter prosecuted to judgment by the administratrix of his estate and his heirs at law.

Miller, in his pleadings, alleged that he was injured due to the negligent manner in which he was given a penicillin injection by a licensed vocational nurse who was employed by the Hospital; that the nurse, at the time of such injection, was under the control of Dr. Hood; that the negligence of the nurse was a proximate cause of the physical injury that he sustained; and that as a result thereof, he incurred certain medical expenses and suffered permanent injuries and total disability. He asked for judgment against all defendants in the amount of $385,000.00.

General denials were filed by all defendants. In addition, the Hospital and the

County each pled the special defense of governmental immunity to the action brought against them by Miller.

Before going to trial on the merits, the Hospital and the County, by a joint motion, moved for summary judgment on the ground of governmental immunity. The trial court, on March 12, 1972, granted the motion in interlocutory form, subject to becoming final upon disposition of the cause.

The case then proceeded to trial before a jury on April 14, 1975. Following the overruling of motions for instructed verdict filed by both the representative of the Estate of John J. Miller, Deceased, and his heirs at law and by Dr. Hood, the trial court submitted two special issues to the jury, which found: 1) that the licensed vocational nurse "when giving the penicillin shot" to Miller was not a "borrowed employee" of Dr. Hood; and 2) that Miller was not entitled to any money as damages "as a result of injury to his sciatic nerve". A final judgment that the administratrix of the Estate of John J. Miller, Deceased, and the heirs at law of the decedent take nothing against all defendants was rendered on June 9, 1975. An appeal has been perfected from that judgment.

The suit arose from the following facts: Miller, complaining of chest pain and fever, sought the medical assistance of Dr. Hood. Following an examination, Dr. Hood concluded that Miller was suffering from bronchial pneumonia and had him admitted to the Hospital. While in the Hospital, Miller, immediately after an injection of penicillin on January 16, 1969 by a licensed vocational nurse who was then in the employ of the Hospital, began to complain of pain and discomfort. Upon notification of Miller's condition, Dr. Hood examined Miller and diagnosed an improper application of penicillin in the sciatic nerve. Soon thereafter, Miller showed signs of paralysis in the lower extremities in the left side of his body. Dr. Hood, satisfied that Miller had recovered from pneumonia, discharged him from the Hospital. One month later, Miller saw Dr. Robert Hardy, a neurosurgeon, for addi-

tional treatment. Failing to respond to Dr. Hardy's initial treatment, Miller was admitted to Baptist Memorial Hospital in San Antonio for purposes of nerve repair surgery. Following this surgery, Miller again complained of pain and discomfort, this time in his lower right extremity. Three weeks later, Miller was discharged from Baptist Memorial Hospital and soon afterward entered the Veterans Hospital in Houston for additional treatment, where he remained for approximately nine (9) months. He committed suicide shortly after his discharge from the Veterans Hospital.

Appellants, in their first three points, contend that the trial court erred in denying their motion for instructed verdict because the uncontroverted evidence established as a matter of law that the nurse, in giving the shot, was a "borrowed employee" of Dr. Hood, even though she was, at that time, in the general employ of the Hospital; that the finding by the jury that the nurse in administering the penicillin injection, was not a "borrowed employee" of Dr. Hood is contrary to the undisputed evidence; and that such jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. None of the points can be sustained.

Appellants argue that Dr. Hood had the right of control over the nurse's acts, since he specifically gave the nurse her orders. Dr. Hood, on the other hand, says that the nurse, while acting pursuant to his orders, was not subject to his control, but was under the control of the Hospital, and was in fact performing regular and routine hospital functions as a general employee of the Hospital at the time she gave the penicillin shot to Miller.

█ Generally speaking, a doctor is not liable for the negligence of hospital nurses who are not his employees unless they administer medication or perform acts under his supervision and control. "The mere fact that a physician or surgeon gives instructions to a hospital employee does not render the physician or surgeon liable for negli-

gence of the hospital employee in carrying out the instructions". 70 C.J.S. Physicians and Surgeons § 54.

Whether a general employee of one employer becomes a borrowed employee of another at a given time is determined by who had the right to control the employee in the details of the work that was performed. *Texas Co. v. Wheat,* 140 Tex. 468, 168 S.W.2d 632 (1943). If the general employee is placed under the control of a special employer in the manner of performing a particular service, he becomes a borrowed employee of the special employer, but if the employee remains under the control of his general employer in the manner of performing such service, he remains the employee of the general employer. *Producers Chemical Company v. McKay,* 366 S.W.2d 220 (Tex.Sup.1963). Where there is no contract between the employers covering the specific right to control the particular employee then a factual question is raised as to whether the employee is a borrowed employee at the time in question. *Sanchez v. Leggett,* 489 S.W.2d 383 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

There is testimony in the record from competent witnesses that it was the customary routine at the Hospital for the attending physician to leave written orders at the nurses' station. Thereafter, the supervising nurse on duty would inform the nurse in charge of medications of the orders, and that nurse would carry out the orders without the assistance of the doctor. It was further established that once the doctor leaves such orders as to what treatment he desires the patient to receive, actual treatment is carried out by the personnel employed by the Hospital without the doctor in attendance except in special cases that require urgent treatment. There is testimony that the giving of a penicillin shot does not require the presence or the assistance of the doctor since the nurse is trained to administer such medication. No urgency is presented by the record.

At the time the shot of penicillin was given to Miller, the nurse was a general employee of the Hospital. It was her job, as a nurse in the Hospital, to administer medication prescribed by the doctors who were practicing medicine in the Hospital. Dr. Hood ordered penicillin to be administered to Miller in the "anterior thigh not closer to groin than four inches or in the deltoid muscle." The nurse did not follow those instructions. However, there is no evidence that Dr. Hood had any right of control over the nurse concerning the details of how she was required to give the shot. Dr. Hood was not present when the shot was given. He did not select the nurse who was to administer the injection. While the nurse gave the shot as ordered by Dr. Hood, her actions in doing so were part of ordinary hospital routine and under the supervision of the supervising nurse then on duty. The relationship of "employer-borrowed employee" cannot be inferred or established in this case merely because the nurse, the general employee of the Hospital, performed routine acts in obedience to the instructions of the doctor. *F. B. McIntire Equipment Co. v. Henderson,* 472 S.W.2d 566 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.); *Wise v. Texas Employers Ins. Ass'n,* 402 S.W.2d 228 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.).

In *Bernardi v. Community Hospital Ass'n,* 166 Colo. 280, 443 P.2d 708 (1968), a case similar factually to this case, the doctor left a written order at the hospital that the plaintiff be given an injection of tetracycline every twelve hours in her right gluteal region. A nurse, who was in the general employ of the hospital, negligently injected the tetracycline into or adjacent to the sciatic nerve, which resulted in serious permanent injuries to the plaintiff. It was held that the doctor did not have the right to control the nurse, and that his instructions that injections were to be given did not give rise to a master-servant relationship. The trial court granted the doctor's motion that the complaint be dismissed for failure to state a claim upon which relief could be granted against him. That ruling by the trial court was affirmed.

Another case in point is *Honeywell v. Rogers,* 251 F.Supp. 841 (Dist.Ct., W.D.

Penn.1966). There, the law of Pennsylvania, like the law in Texas, imposed liability on a doctor for the negligence of an employee of the hospital only in those cases where the doctor had direct charge of the administration of the injection and had the right to control the act to be done and the details of its performance. The federal court, applying Pennsylvania law, refused to impose vicarious liability on the doctor where the injury to the patient was caused by the negligent injection of a drug by a floor nurse of the hospital when the doctor was not present during the administration of the shot.

The "borrowed employee" doctrine, as applied in the field of medicine, generally has been divided into two classifications: 1) operating room situations; and 2) non-operating room situations. We are here concerned only with the latter classification. In a non-operating room situation, absent any special circumstances, vicarious liability cannot be imposed upon the attending doctor for negligence in the treatment prescribed by him but administered by floor nurses employed by the hospital in the regular course of the services furnished by the hospital.

The record does not authorize a holding that the nurse was a borrowed employee of Dr. Hood as a matter of law. The trial court properly overruled appellants' motion for an instructed verdict. The evidence makes it plain that reasonable minds could differ as to whether Dr. Hood had the right to control the acts of the nurse at the time in question. The jury was entitled to conclude that the nurse was carrying out her general duties as an employee of the Hospital, and was following the instructions of Dr. Hood, when the penicillin injection was administered to Miller. The finding by the jury that the nurse was not a "borrowed employee" of Dr. Hood is fully supported by the evidence and is not contrary to either the "undisputed evidence" or to the "overwhelming great weight and preponderance of the evidence". Appellants' points 1, 2 and 3 are overruled.

Appellants next complain that the jury's finding of "none" to the damage issue is contrary to the undisputed evidence and is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, which indicates probable bias or prejudice against them (points 4 and 5). They insist that the trial court erred in denying them a new trial, since it is obvious that the jury attempted "to insure that no recovery would be made against Dr. Hood"; and, therefore, they did not receive a fair trial.

The uncontroverted evidence established permanent and disabling injury to Miller as a result of the penicillin injection on January 16, 1969. The necessity for medical treatment thereafter and the reasonableness of a charge of $2,900.00 therefor was stipulated. While the answer by the jury to the damage issue is contrary to the undisputed evidence and is against the great weight and preponderance of the evidence, the record does not present reversible error, since the jury, in answer to Special Issue No. 1, found that the nurse who gave the shot which caused the injury was not the borrowed employee of Dr. Hood at that time. That finding prevents appellants from recovering any damages in their suit against Dr. Hood. Thus the jury's answer to the damage issue becomes immaterial. *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Rampy v. Allstate Insurance Company,* 492 S.W.2d 85 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.). Appellants' points 4 and 5 are overruled.

Appellants, in points 6, 7 and 8, attack the granting of summary judgment in favor of the Hospital and of the County on the basis of "governmental immunity." They say: 1) the summary judgment proof did not establish as a matter of law that no material fact issues existed under the Texas Tort Claims Act (point 6); 2) the hospital was liable under contract for negligent injury to a paying patient (point 7); and 3) the time limitation provision of the Texas Tort Claims Act is unconstitutional (point 8).

The trial court made the following findings of fact in the judgment:

"(1) that Mauritz Memorial Jackson County Hospital was operated by Jackson County under statutory authority for the creation of county-wide hospitals at the time of plaintiff's injuries on January 16, 1969;

(2) that John J. Miller, deceased, was a paying patient of the hospital at the time of the injuries sustained by him when he received an injection in the sciatic nerve by a nurse employed by the hospital, and that the plaintiff paid the defendant for the services and drugs involved in the injection, and that the plaintiff was not a charity patient;

(3) that at the time plaintiff sustained his injuries as a paying patient of the hospital, that the hospital was furnishing services customarily performed by private hospitals."

The court then concluded:

" . . . that the Mauritz Memorial Jackson County Hospital and Jackson County, Texas are entitled to judgment based upon their governmental immunity from tort liability, . . . "

The summary judgment proof establishes the fact that Jackson County is a duly organized and existing county of this State. We judicially notice that fact. The proof further establishes the fact that the Hospital is a county hospital. The injury occurred prior to the effective date of the Texas Tort Claims Act. None of the pleadings filed by either Miller, or by the representative of his estate and his heirs at law, raised the question of the applicability of the Texas Tort Claims Act to this case. Appellants do not attack the doctrine of governmental immunity by a single point of error. A reading of the trial petition in this case clearly shows that the cause of action alleged against all defendants sounds in tort, not in contract.

■ As the acts complained of in this case occurred prior to January 1, 1970, the effective date of the Texas Tort Claims Act (Tex.Rev.Civ.Stat.Ann. art. 6252–19), the provisions of the Act are not applicable.

*McCrary v. City of Odessa,* 482 S.W.2d 151 (Tex.Sup.1972). We, therefore, apply the law with respect to governmental immunity as it existed on January 16, 1969, the date of the injury.

■ The legal concept of governmental immunity as it existed on January 16, 1969, applies to the action brought against the Hospital and the County. The County is a governmental agency and an arm of the State; the Hospital is a governmental agency, an instrumentality of the State, which carries out a governmental function. Both are immune from tort liability caused by the negligence of the Hospital employee in the case here presented. *Ritch v. Tarrant County Hospital District,* 480 S.W.2d 622 (Tex.Sup.1972, cert. denied 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669); *Hopper v. Midland County,* 500 S.W.2d 552 (Tex. Civ.App.—El Paso 1973, writ ref'd n. r. e.); *Dobbins v. Texas Turnpike Authority,* 496 S.W.2d 744 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r. e.); *Bayless v. Richardson Hospital Authority,* 508 S.W.2d 189 (Tex. Civ.App.—Eastland 1974, writ ref'd n. r. e.); *Fesal v. Hutchinson County,* 443 S.W.2d 937 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.). Neither the Hospital nor the County is liable in tort as a matter of law; therefore, there is no genuine issue of fact to be determined concerning the alleged acts of negligence. Appellants' point 6 is overruled.

■ We also overrule appellants' point 7. The trial petition does not allege anything that will support a contention that this is a suit for breach of contract. Moreover, a suit for breach of contract may not be maintained against a county or an agency of the State performing a governmental function without first obtaining legislative permission therefor. *Townsend v. Memorial Medical Center,* 529 S.W.2d 264 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n. r. e.). No legislative permission to sue either the Hospital or the County is shown by the record.

Appellants' point 8 reads as follows:

"The Court erred in granting Mauritz Memorial Jackson County Hospital's motion for summary judgment on the basis that the Texas Tort Claims Act precludes liability for any injury occurring prior to January 1, 1970, because the Texas Tort Claims Act is unconstitutional in setting an arbitrary date for the abolishment of governmental immunity, thereby permitting a 'class litigation preference to certain citizens of the State of Texas' in denial of the State and Federal constitutional guarantees of equal protection of the law."

We refuse to declare the Texas Tort Claims Act unconstitutional for the reason set forth in appellants' point. If the question of immunity under the Act is to be re-examined "from the constitutional aspect of the limitation as to the time of injury provision of the Act being in violation of due process and equal protection of the law," as argued by appellants in their brief, then such re-examination should be made by our Supreme Court, not by an intermediate court. We think the Act can be reconciled with our State Constitution. We hold that the Legislature acted within its constitutional authority in providing that the Act would become effective on January 1, 1970. *Harris County Flood Control Dist. v. Mihelich,* 525 S.W.2d 506 (Tex.Sup.1975); *Harris County v. Dowlearn,* 489 S.W.2d 140 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). Appellants' point 8 is overruled.

Appellants, in their 9th point of error, assert that the trial court erred in granting a summary judgment to Childress because he did not file a motion for summary judgment and did not establish, by summary judgment evidence, that he was entitled to summary judgment. The point has no merit.

The judgment that was rendered on June 9, 1975, and from which appellants have prosecuted this appeal, among other recitals, states:

" . . . and it appearing that the Court had heretofore entered an order disposing of the claims against the Defendants, Mauritz Memorial Jackson County Hospital and James Childress. The Plaintiffs announced ready to proceed in their claim against the Defendant, Dr. Charles H. Hood;"

The judgment decreed that all those persons who are appellants in this appeal "take nothing of and from any of the Defendants in this cause".

Apparently, appellants presume that the trial court granted a summary judgment in favor of Childress without any motion for summary judgment having been filed. The presumption is not warranted by the record in this case.

The judgment does not state that the claim against Childress was disposed of by *summary* judgment. The record is silent as to how the trial court disposed of such claim. Nevertheless, there is the positive recital in the judgment that such claim was disposed of by an *order* of the court prior to the commencement of the jury trial against Hood.

It is a settled rule in Texas that a judgment of a court of competent jurisdiction, rendered in the exercise of its usual powers and regular on its face, imports absolute verity, and carries with it a presumption of validity unless vice appears on the face thereof or in the record supporting it. *Williams v. Tooke,* 116 S.W.2d 1114 (Tex.Civ.App.—Texarkana 1938, writ dism'd). Every reasonable presumption will be indulged to sustain a judgment and nothing will be presumed against it; all prior requisites to the rendition of a judgment will be presumed to have been fulfilled and the recitals in a judgment will be presumed to state the truth. *Liddell v. Blevins,* 244 S.W.2d 335 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.).

The burden was on the appellants to show by affirmative proof that the claim against Childress was disposed of by the trial court by an order that was invalid. They did not meet that burden. There are several orders besides summary judgment that could have disposed of the claim against Childress. Under the record and

circumstances here presented, we must presume that the trial court, by proper order, correctly and validly disposed of the claim against Childress prior to the rendition of a final judgment in the case.

The appellants rely on *Torres v. Aransas County Navigation District No. 1,* 346 S.W.2d 903 (Tex.Civ.App.—San Antonio 1961, no writ) in support of their contention under the point. That case is totally different from the instant case. There, the trial court dismissed the action against all defendants on the basis that the "plaintiffs' petition affirmatively shows that the tort action can not lie against a governmental agency". The Court of Civil Appeals noted that while the plaintiffs could not assert a negligence action against the governmental agency, it did not follow that they could not assert such an action against the individuals. Accordingly, the judgment was affirmed insofar as it dismissed the action against the governmental agency, but was reversed and remanded insofar as it dismissed the action against the individuals. Here, there is no dismissal on the pleadings and there is nothing to indicate a dismissal of the action against Childress. Appellants' point 9 is overruled.

The judgment of the trial court is AFFIRMED.