**Luther JONES, Mayor of the City of Corpus Christi et al., Appellants,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL UNION NO. 936 et al., Appellees.**

No. 1613.

Court of Civil Appeals of Texas, Corpus Christi.

May 22, 1980.

Rehearing Denied June 12, 1980.

Bruce Aycock, James R. Bray, Corpus Christi, for appellants.

Russell H. McMains, David L. Perry, Edwards & Perry, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This case involves the right of appellees (the International Association of Firefighters, Local Union No. 936, the Corpus Christi Police Officers Association, and their officers, individually and in their representative capacities), to a writ of mandamus to compel appellants (the Mayor, City Council, City Manager, and City Secretary to the City of Corpus Christi), hereinafter called City, to hold an election concerning a proposed amendment to the Corpus Christi City Charter which, if passed, would, in effect, require mandatory arbitration as a method to resolve collective bargaining impasses between the City of Corpus Christi and the Firefighters and Policemen. The cause was submitted to the trial judge on stipulated facts. The trial court granted appellees' request for a writ of mandamus from which the city appeals.

The stipulated facts that are material to this appeal are: 1) the City of Corpus Christi (City) is a home-rule city under the laws of the State of Texas; 2) in 1975, the qualified voters of the City in a duly held election lawfully adopted the provisions of Tex.Rev.Civ.Stat.Ann. art. 5154c–1 (Supp. 1980), and have never repealed the adoption of the same; 3) on March 5, 1979, appellees presented a petition to the City Secretary bearing the signatures of more than 5% of the qualified voters of the City; 4) the petition requested that a proposal be submitted to the qualified voters of the City as a charter amendment to require compulsory binding arbitration at the request of either party in the event an impasse had been reached in the collective bargaining negotiations; 5) on July 3, 1979, the City Council adopted a resolution refusing to call an election for the purpose of voting on the proposed charter amendment; 6) the City Council, acting through ordinance, has the authority on behalf of the City, to enter into a collective bargaining agreement pursuant to article 5154c–1, and to agree, or to refuse to agree, to particular proposed provisions of such agreements; 7) City employees serve as representatives of the City Council in negotiations for collective bargaining agreements with all final decisions regarding particular terms contained in collective bargaining agreements made by the City Council acting through ordinance.

On appeal, the parties agree that the stipulated facts establish that appellees complied with all of the conditions precedent to requiring an election on the proposed charter amendment pursuant to Tex. Rev.Civ.Stat.Ann. article 1170 (Supp.1978).[1] Under such circumstances, our appellate review is limited. The appellees, being otherwise entitled to have an election called and held, cannot be defeated unless it appears that the subject matter of the proposed

---

1. This article provides, in relevant part, as follows:

   "When the *governing body* desires to submit amendments to any existing charter, said body may, on its own motion, in the absence of a petition, *and shall*, on receiving· a petition signed by qualified voters in such city, town, or political subdivision in number not less than five percent (5%) thereof or 20,000 signatures, whichever is less, *submit any proposed amendment or amendments to such charter.*" (emphasis added).

charter amendment is not legislative in character or that the subject matter of the proposed charter amendment has been withdrawn from the field in which initiatory process is operative. The validity of the amendment, if adopted, is not at issue. *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 648 (1951); *Edwards v. Murphy*, 256 S.W.2d 470, 476–77 (Tex.Civ.App.—Fort Worth 1953, writ dism'd). Here, the parties agree that the subject matter of the proposed charter amendment is legislative in character. Our Court has so held in *International Association of Firefighters, Local No. 2390 v. City of Kingsville*, 568 S.W.2d 391 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). Therefore, our inquiry is limited to the single question of whether or not the subject matter of the proposed charter amendment has been withdrawn from the field in which the initiatory process is operative.

All of the parties agree that the Supreme Court case of *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1951) is the leading authority on the subject that is before us. In that case, Justice Calvert, writing for the Supreme Court, summarized as follows several methods by which the initiatory process could be limited:

"In the case of *Taxpayers' Ass'n of Harris County v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657, this Court said that 'the power of initiative and referendum . . . is the exercise by the people of a power reserved to them, and not the exercise of a right granted', and that 'in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved.' . . . The field where the initiatory process is operative may also be limited by general law. Article XI, Section 5 of our Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this state. Any rights conferred by or claimed under the provisions of a city charter, including the right to an initiative election, are subordinate to the provisions of the general law. It follows

that the Legislature may by general law withdraw a particular subject from the field in which the initiatory process is operative. Again, the field may be limited by the city charter itself. Other provisions of the charter may withdraw from the people the power under the initiative provisions to deal with a particular subject."

Here, the parties agree that there is no provision, either express or implied, contained in the City Charter which would limit the initiative process in question. In addition, the City does not contend, nor have we found, an express provision contained in the general laws of this State precluding the initiative process in this instance.

Under its first point of error, however, the City contends that it was justified in refusing to submit the proposed charter amendment to the electorate and that the district court erred in granting its writ of mandamus ordering an election because article 5154c–1 vests exclusive authority in the public employer to make all decisions for the City regarding collective bargaining. The City argues further that this article establishes procedural steps in the collective bargaining process which are incompatible with a determination by the electorate to submit to binding arbitration, thus, in both instances, withdrawing by implication the subject matter of the proposed amendment from the initiative process.

Until the enactment of article 5154c–1, the general laws of the State expressly prohibited collective bargaining as well as strikes in the public employment sector. Tex.Rev.Civ.Stat.Ann. art. 5154c §§ 1, 3 (1971). Art. 5154c was amended by art. 5154c–1 in 1973. Sec. 20(a) states that: "This Act shall supersede all conflicting provisions in previous statutes concerning this subject matter; to the extent of any conflict the previous conflicting statutory provision is hereby repealed . . . ." This new act (The Fire and Police Employee Relations Act), applies only to firefighters and policemen in cities which adopt the

provisions of the Act by local option elections.[2]

The qualified voters of the City of Corpus Christi, in an election held for this purpose, adopted this new article. This article (5154c–1), as enacted, continues to prohibit strikes and generally provides procedures whereby public employers and firefighters and policemen can reach an agreement concerning compensation and other terms and conditions of employment through collective bargaining, mediation and voluntary arbitration. Section 2 of the Act expressly states the Act's policy. Paragraph 2 of this section says:

> In view of the essential and emergency nature of the public service performed by firefighters and policemen, a reasonable alternative to such strikes is a system of arbitration conducted under adequate legislative standards."

Section 4 of the Act establishes the requirement that firefighters and policemen should receive compensation and other conditions of employment which are substantially the same as those which prevail in comparable private sector employment.

Where the firefighters and policemen are represented by an association for collective bargaining purposes, section 7 obligates the public employer and the association to bargain collectively in good faith and at reasonable times concerning the terms and conditions of employment or to negotiate an agreement concerning such terms and conditions.

The particular sections of the Act upon which the City relies to support its contentions [3] provide as follows:

> "Sec. 9. (a) In any dispute between a public employer and its protective services employees represented by an association, pursuant to this Act, where an impasse is reached in the collective bargaining process, or where the appropriate lawmaking body fails to approve a contract reached through collective bargaining, and as a result the public employer and employees are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request appointment of an arbitration board; provided, however, that a party shall not request arbitration more than once during any fiscal year.

&ast; &ast; &ast; &ast; &ast; &ast;

### ARBITRATION

> Sec. 10. (a) The request for arbitration . . . shall be initiated within five days . . . . *If both parties elect to settle their dispute by arbitration*, such election shall be made within five days following the request for arbitration, and shall be *in the form of a written agreement to arbitrate.* The issues to be arbitrated shall be all matters which the parties have been unable to resolve . . . .

2. Section 5(b) of the Act provides, in part, as follows:

> "The provisions of this Act may be adopted by any city, town, or other political subdivision to which this Act applies by the following method:
> Upon receiving a petition signed by the lesser of five percent or 20,000 of the qualified voters voting in the last preceding general election in such city, town, or political subdivision, the governing body of such city, town, or political subdivision shall hold an election within 60 days after said petition has been filed with such governing body. If at said election, a majority of the votes cast shall favor the adoption of this Act, then such governing body shall place this Act into effect within 30 days after the beginning of the first fiscal year of said city or town after said election. The question which shall be submitted to the vote of the qualified electors shall be as follows:
> FOR or AGAINST the following: (etc.)
> &ast; &ast; &ast;"

In addition, this section allows the Act to be repealed by a similar election option which may be exercised after the Act has been in force for at least one year.

3. City's contentions: 1) that the exclusive authority to make all decisions under the Act for the "public employer" is the City itself; and 2) the Act makes established procedural steps in the collective bargaining process which is incompatible with a determination by the electorate.

(b) Although the policy of this Act favors and encourages the parties to elect voluntary arbitration, *nothing contained herein shall be deemed a requirement for compulsory arbitration.*" (emphasis added).

Sections 11 and 12 of the Act outline the arbitration procedures. Section 13 requires that the arbitration board render its award in accordance with the requirements concerning wages and conditions of employment mandated by Section 4 above mentioned, and stipulates, in effect, that the arbitration award shall be binding on the parties unless it is overturned or modified pursuant to narrowly defined grounds for judicial review contained in section 14.

■ In the "policy" portion of the Act it says: "Another reasonable alternative, which should be provided in the event the parties fail to agree to arbitrate, is judicial enforcement of the requirements of this Act regarding the compensation and working conditions applicable to firefighters and policemen." In the event the public employer refuses to arbitrate, section 16 of the Act provides a second avenue for impasse resolution. This section authorizes the employee association to bring an action in State district court for enforcement of the prevailing wage and employment condition standards contained in section 4. However, section 16 has been specifically held to be an unconstitutional delegation of a legislative function to the judiciary. See *International Association of Firefighters, Local No. 2390 v. City of Kingsville*, 568 S.W.2d 391 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). The legislature did not amend the Act after the above decision in the regular session of the 66th Legislature (1979) which followed. Thus, there is no impasse resolution provision contained in the Act in the event the public employer refuses to submit disputed issues to arbitration. Does this, then, leave open to the City the right to legislate or if the City fails or refuses to act, the electorate of the City, by election and charter amendment? We believe that it does.

The relevant provisions of the petition containing the proposed charter amendment provide as follows:

"In the event that the City of Corpus Christi and the Association have reached an impasse as defined under Vernon's Annotated Civil Statutes of Texas, Article 5154c–1, Section 9; and in the event mediation invoked under Section 9 of said Article has failed to resolve the impasse, or one of the parties has refused to mediate; then the following impasse procedure shall prevail:

1. Either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request arbitration; provided however a party shall not request arbitration more than once during any fiscal year. In the event that one party makes a request for arbitration, then both parties shall submit all issues in dispute to arbitration. The issues to be submitted to arbitration shall be all matters which the parties have been unable to resolve through collective bargaining.

2. Arbitration invoked under this Article shall be conducted by the parties pursuant to the procedures, duties, requirements and rights set forth in Vernon's Annotated Civil Statutes of Texas, Article 5154c–1, Sections 9, 10, 11, 12, 13, 14, and 15; except that Vernon's Annotated Civil Statutes of Texas, Article 5154c–1, Section 10(b) shall be specifically excluded from this Article and not apply herein.

3. If requested by either party, it shall be the duty of the arbitration board convened under this Article to render an award that takes into consideration the City's ability to pay, the probability of a tax increase resulting from an award, and the impact of such tax increase on the welfare and interest of the City.

4. If any provision of this Article or the application of such provision to any persons or circumstances is held invalid, the remainder of the Article or the application of such provision to persons

or circumstances other than those to which it is held invalid shall not be affected thereby."

The proposed charter amendment leaves intact the arbitration procedures otherwise established by the Act, but does require mandatory arbitration upon the request of either party after an impasse has been reached.

The City argues in various ways that Sections 9(a) and 10(b) above quoted, impliedly remove the subject matter of the proposed amendment from the initiative process because these sections clearly reserve to the "public employer," [4] as defined by the Act [to the exclusion of the people through initiative charter amendment proceedings], the decision whether to submit to arbitration, just as the Act reserves to the public employer the power to agree to contractual provisions [to the exclusion of the people through initiative charter amendment proceedings]. This is not so for a number of reasons. In the first place, the legislature left to the people of Corpus Christi (the electorate) the first decision by election of whether or not to permit the City to come under the Act. One of the purposes of the Act when it was adopted was whether the ". . . firefighters and policemen, like employees in the private sector, should have the right to organize for purposes of collective bargaining, for collective bargaining is deemed to be a fair and practical method for determining wages and other conditions of employment . ."

Next, the City argues that "the legislature vested exclusive authority in the Corpus Christi City Council to [decide] the question of whether to submit to such binding interest arbitration." The Act as originally written by the legislators provides for judicial enforcement when the public employer declines to arbitrate. The Act gave the judiciary ". . . full power, authority, and jurisdiction to enforce the requirements of section 4 hereof relating to compensation and/or other terms and conditions of employment . . ." This provision makes it clear that the legislature did not intend to vest exclusive authority in the City to make the final binding decision. Implicit in the City's arguments, as we understand them, is the assumption that the people, acting through the proposed charter amendment, are attempting to assume the role of the public employer, which is not a legislative role. On the other hand, all parties agree that the subject matter of the proposed charter amendment is legislative in character. The proposed charter amendment leaves intact the provisions of article 5154c–1 establishing the collective bargaining and the administration procedures. Therefore, the proposed charter amendment requiring the parties to submit to arbitration upon the request of either party where an unresolved impasse has been reached fills in the void left by the unconstitutional provision.

Going back to the central issue in this case is the question of whether or not the City Council, acting in its capacity as the "lawmaking body" of the City, has the power, in the first instance, to legislate the same subject matter as is contained in the proposed charter amendment that is now before us. If such a power exists, we see nothing in article 5154c–1 which would preclude the exercise of that power through the initiative process. As stated by our Supreme Court in *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 651 (1951):

"The legislative direction that classification 'shall be provided by ordinance of the City Council', does not negate the right and power of the people to pass the classification ordinance. The legislature's use of the words 'City Council, or legisla-

---

4. The term "public employer" means the proper official or officials within any city, town, or other political subdivision whose duty is to establish the wages, salaries, rates of pay, hours, working conditions, and other terms and conditions of employment of firefighters and/or policemen whether such person or per-sons be the mayor, city manager, town manager, town administrator, city council, director of personnel, personnel board, commissioners, *or other officials*, by whatever name designated, or by a combination of such persons. (emphasis added).

tive body' is simple of explanation. *All legislative powers conferred by statute on municipalities in this state are conferred on the 'City Council' or 'City Commission'.* It is to be doubted that there exists anywhere in our statutes a provision that a given legislative power of a municipality may be exercised 'by the people' or 'through the initiative'. *If it were held that legislative powers could not be exercised by the people through the initiative in all cases in which the statutes provide that they shall be exercised by the 'City Council', the people would be shorn of all right to exercise any of the statutory powers conferred on municipal governments and the initiative would become an empty symbol.* There can be no right or power existing in the people of Austin to adopt an ordinance through the initiative process if the power to adopt it is not lodged in the City Council in the first instance." (emphasis added).

See *City of Sweetwater v. Geron*, 380 S.W.2d 550, 553 (Tex.1964).

■ The City of Corpus Christi is a home-rule city which derives its power not from the legislature, but from Article XI, Section 5 of the Texas Constitution.[5] See e. g. *State v. City of La Porte*, 386 S.W.2d 782, 785 (Tex.1965). Home-rule cities have "full power of self-government" and, as a result, such cities must "look to the acts of the legislature, not for grants of power to such cities, but only for limitations on their powers." *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948). Or, stated another way, the governing body only looks to acts of the Legislature to ascertain if it has placed any limitations on the power to act as granted in Article XI, Section 5. *State v. City of La Porte*, 386 S.W.2d 782, 785 (Tex.1965). A limitation on the power of home-rule cities by general law may be an express limitation or one arising by im-

plication. *Lower Colorado Riv. Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex.1975), citing *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 649 (1951). Should the legislature decide to limit the authority of a home-rule city, its intention to do so should appear with unmistakable clarity. *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964). See *Lower Colorado Riv. Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex.1975). "Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end." *Glass v. Smith*, supra.

We cannot say that there is any provision contained in article 5154c–1 which is so clear and so compelling and appears with such unmistakable clarity as to require the conclusion that the legislature impliedly limited the power of a home-rule city such as Corpus Christi to propose, on its own initiative, a charter amendment containing the same subject matter as the one before us. While the City generally argues that the subject matter of this charter amendment petition has been withdrawn from the *initiative* process, nowhere does the City contend that the City, acting in its lawmaking capacity, could not propose on its own a charter amendment such as the one before us.

It is noteworthy that the Act that is before us contained only the following express reference to the broad powers of a home-rule city:

"Sec. 20. (a) This Act shall supersede all conflicting provisions in previous state statutes concerning this subject matter; . . . and this Act shall pre-empt all *contrary* local ordinances, executive orders, legislation, rules, or regulations adopted by the state or by any of its

---

5. This section provides, in relevant part, as follows:
"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legisla-

ture, and providing that no charter or any ordinance under said charter shall contain any provisions inconsistent with the Constitution of this State or of the general laws enacted by the Legislature of this State." See also Tex.Rev.Civ.Stat.Ann. art. 1165 (1963).

political subdivisions or agents, such as, but not limited to, a personnel board, a civil service commission, or a *home-rule municipality*." (emphasis added).

Thus, the Act, by its own terms, pre-empts only *contrary* enactments of the legislative body of a home-rule city. Since there are no express or implied provisions withdrawing further the subject matter from the initiative process, the people are entitled to exercise the same power through the initiative process as the governing body of the municipality can exercise.

▉ The City argues that Sec. 10(b) directs that compulsory arbitration shall be permissive only. This particular provision only states that nothing contained in this Act as written shall be deemed to be a requirement for compulsory arbitration. It does not prohibit such type of arbitration, it only states in effect that there is another way that the parties can settle an impasse (by judicial enforcement), rather than by compulsory arbitration.

The legislature recognized the wisdom of settling the disputes of firefighters and policemen concerning wages and working conditions. The statute says in relevant part:

"A denial to such employees of the right to organize and bargain collectively would lead to strife and unrest, with consequent injury to the health, safety, and welfare of the public, however, *demands* that strikes, lockouts, work stoppages and slowdowns of firefighters and policemen be prohibited; therefore, it is the obligation of the state to make available reasonable alternatives to strikes by employees in these protective services." Tex. Rev.Civ.Stat.Ann. art. 5154c–1, § 2(b)(1) (Supp.1980). (emphasis added).

If there were not some method to resolve a possible impasse, then the entire purpose of the Act would be defeated.

The City argues that binding arbitration of labor disputes takes away from their elective rights as members of the City Council to make the final decisions on wages and working conditions. As we have said, the Act as originally written would have given the final decision to the courts

to decide, had it been constitutional. The proposed charter amendment (that is before us) gives to the qualified voters, in effect, the decision of whether or not to implement an amendment to this Act to resolve impasses in labor disputes, not to make decisions on wages and working conditions. In the very first place, the legislature let the voters decide whether or not to bring the City and the firefighters and policemen under the Act. The proposed charter amendment does not become law until it is approved by the qualified voters. If adopted and it turns out to be undesirable, the voters can repeal the Act. In the meantime, the next legislature, if it chooses to act, can pre-empt the proposed charter amendment as it chooses, through legislation affecting the same. The Act as written has many safeguards, all of which we think, protect all of the parties throughout, as the general policy of the Act contemplates.

The parties conceded that the subject matter of the proposed charter amendment is legislative in character and therefore subject to the initiative process normally, and since we have held that it has not been withdrawn from that field by the City Charter or by legislation in clear and unmistakable language, it follows that the appellees are undertaking to exercise only such rights as are legally theirs by permitting the people of Corpus Christi to deal with the subject matter. The City's point of error is overruled.

▉ The City, in their remaining two points of error, recognizes, yet urges us to change, the rule announced in *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1951). The City suggests that since *Glass v. Smith* was a 5 to 4 Supreme Court decision, that it is now ripe to be reviewed and overruled, suggesting that we ignore the doctrine of stare decisis. Stare decisis is a rule by which a principle of law which has been decided should be followed in similar cases. The rule is inflexible where the intermediate courts are concerned. This is especially true where this precedent was set by the highest court. Attorneys advise their clients and practice in the courts of this

state based, to a large degree, on their reliance and prediction that the courts will follow that which has been decided before.

The City would have us expand the scope of our review of this case to include an examination of the validity vel non of the proposed amendment prior to the election and, in effect, render an advisory opinion on its constitutionality. This we cannot and will not do. These points of error are also overruled.

The judgment of the trial court is affirmed.