Tom L. NELSON, Gloria Jean Nelson, and Mark Ashley Nelson, a Minor, Appellants,

v.

Edward M. KRUSEN, M.D. and Baylor University Medical Center, Appellees.

No. 21044.

Court of Appeals of Texas, Dallas.

May 3, 1982.

Rehearing Denied June 17, 1982.

Larry Hayes, Office of Windle Turley, Dallas, for appellants.

Richard E. Gray, Thompson & Knight, Catherine Gerhauser, Burford & Ryburn, Dallas, for appellees.

Before GUITTARD, C. J., and CARVER and FISH, JJ.

FISH, Justice.

Tom and Gloria Nelson and their minor son Mark appeal from a summary judgment denying relief on their claims of medical negligence against Dr. Edward M. Krusen and Baylor University Medical Center. In seven points of error, Tom and Gloria argue that the two-year statute of limitations, held by the trial court to bar their claims, is unconstitutional because such claims were undiscoverable during the limitations period. As a final point of error, Mark contends that the trial court's grant of summary judgment was improper because his pleadings state a valid cause of action of wrongful life. We affirm without reaching the constitutional arguments and sustain the summary judgment against Mark because a cause of action for wrongful life has not yet been recognized by Texas law.

The material facts are not disputed. In 1976, the Nelsons were the parents of a child afflicted with Duchenne Muscular Dystrophy, a neuromuscular disease. With Gloria Nelson again pregnant, the couple consulted Dr. Krusen to determine whether she was a genetic carrier of this disease so that they could decide whether to terminate her pregnancy. Dr. Krusen was Medical Director for a clinic designated by the Muscular Dystrophy Association of America, and Mrs. Nelson had been referred to him by the Association for examination, testing and evaluation. Dr. Krusen examined Mrs. Nelson on April 30, 1976 and found pregnancy, normal muscle test and reflexes, normal electromyogram and normal laboratory test of Creatine Phosphokinase. He report-

ed these findings to the Association by letter dated May 4, 1976. Dr. Krusen examined Mrs. Nelson again on May 18 and June 8, 1976. On each occasion, he found, and reported by letter to the Association, that she was still pregnant and all other findings were normal. Dr. Krusen's last contact with the Nelsons in any medical capacity occurred no later than June or July, 1976.

After these consultations with Dr. Krusen, the Nelsons did not terminate Mrs. Nelson's pregnancy. A son, Mark Ashley Nelson, was born November 24, 1976. During a routine nursery school examination conducted two weeks before Mark's third birthday, a podiatrist noted that Mark had tight heel cords bilaterally. The podiatrist referred Mark to Dr. Robert Zeller, a specialist in pediatric neurology. Dr. Zeller examined Mark on February 20, 1980 and concluded the child had Duchenne Muscular Dystrophy. According to Dr. Zeller, a child may exhibit some clumsiness by two years of age that in retrospect is consistent with this disease, but it is only when the child gets older while continuing to exhibit clumsiness, not attributable to simply being two years of age or learning to walk, that the disease becomes detectable by a trained eye.

Nine months after Dr. Zeller's diagnosis, the Nelsons filed this suit alleging that Dr. Krusen was negligent in assuring them Mrs. Nelson was not a carrier of this disease and in advising them that her risk of having an afflicted child was no greater than that faced by any member of the general population. The suit also asserted that Dr. Krusen's advice and assurances were the basis of the decision not to terminate the pregnancy of Mrs. Nelson which resulted in Mark's birth. Alternatively, the Nelsons claimed that Baylor University Medical Center did not accurately conduct tests on Mrs. Nelson and did not furnish accurate test results to Dr. Krusen, causing Dr. Krusen to give them erroneous advice. Damages were sought on behalf of both parents and the afflicted child.

Each defendant raised limitations as a defense and moved for summary judgment, which was granted. The question present-ed for our decision is whether limitations was conclusively established as a matter of law.

## PARENTS' CLAIMS

■ The first seven points of error urge that the trial court erred in granting summary judgment because section 4 of article 5.82, Tex.Ins.Code (Repealed by Acts 1977, 65th Leg., p. 2064, ch. 817, Pt. 4, § 41.03, eff. Aug. 29, 1977), which prescribes a 2-year limitations period from the date of the occurrence for medical malpractice claims against insured health care providers, violates both the state and federal constitutions. They raise these constitutional challenges to article 5.82 because, on the facts of this case, the 2-year statute of limitations operates to bar their claims before they were aware—or could in the exercise of reasonable diligence have become aware—that they had such claims.

We consider it unnecessary to determine these constitutional claims. The enactment of article 5.82, section 4, in 1975 (and the subsequent enactment of article 4590i, section 10.01 of the Texas Revised Civil Statutes, in 1977) effected no change in the length of the limitation period applicable to medical malpractice claims based on misdiagnosis. Article 5526 previously prescribed a limitation period of two years for tort claims generally. Tex.Rev.Civ.Stat.Ann. (Vernon 1958). Although in some medical malpractice cases that statute was construed to run from the date the negligence was discovered rather than the date the negligence occurred, the Supreme Court has since limited its approval of the "discovery rule" to three kinds of malpractice claims: (1) foreign object cases; (2) negligent performance of vasectomy cases; and (3) excessive exposure to x-ray cases. With respect to all other kinds of medical malpractice, the Supreme Court has ruled that limitations runs from the date of the occurrence. *Robinson v. Weaver*, 550 S.W.2d 18 (Tex.1977). Since section 4 of article 5.82 did not change the limitations period applicable to the Nelsons' claims, its enactment did not harm them, and we need not therefore consider their constitutional attacks.

In so ruling, we note that the Supreme Court in *Robinson* rejected arguments similar to those advanced here. If the "occurrence rule" for limitations in medical malpractice cases is to be reexamined, we should leave such a re-examination to the Supreme Court. *See Jones v. International Ass'n of Firefighters*, 601 S.W.2d 454, 461–462 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.); *Miller v. Hood*, 536 S.W.2d 278, 285 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *Burnett v. City of Houston*, 442 S.W.2d 919, 921 (Tex. Civ.App.—Houston [14th Dist.] 1969, writ ref'd).

We are also mindful, in reaching this result, that courts should not decide constitutional questions unless absolutely necessary. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–3, 80 L.Ed. 688 (1936), (Brandeis, J., concurring); *Bush v. State of Texas*, 372 U.S. 586, 590, 83 S.Ct. 922, 925, 9 L.Ed.2d 958 (1963); *Ratcliff v. Estelle*, 597 F.2d 474, 478 (5th Cir. 1979), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93. *See also Texas State Bd. of Barber Exam. v. Beaumont Bar. Col.*, 454 S.W.2d 729, 732 (Tex. 1970).

### CHILD'S CLAIMS

In their eighth point, the Nelsons assert that the trial court erred in denying Mark's claim for wrongful life. Although it is ordinarily error to grant summary judgment for failing to state a cause of action without granting leave to amend, *see Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974), in this case amendment would have been futile because the law of Texas has never recognized such a cause of action. *See Duson v. Midland Cty. Ind. School Dist.*, 627 S.W.2d 428, 429 (Tex. Civ.App.—El Paso 1981, no writ); *Morris v. Hargrove*, 351 S.W.2d 666, 668 (Tex.Civ. App.—Austin 1961, writ ref'd n. r. e.).

Recognition of such a cause of action in other jurisdictions has not come quickly or easily. Early cases uniformly rejected such a cause. In recent times, a few jurisdictions appear to have allowed such a cause of action, but only under very limited circumstances. *See generally* Morrison, *Torts Involving the Unborn—A Limited Cosmology*, 31 Baylor L.Rev. 131 (1979). At oral argument, counsel for the Nelsons conceded that Texas has yet to recognize affirmatively a cause of action for wrongful life. He contended, however, that the decision in *Jacobs v. Theimer*, 519 S.W.2d 846 (Tex.1975), provides, at least impliedly, support for Mark's claim for wrongful life. We do not agree.

■ Mark's pleadings, liberally construed, seek two general types of damages: (1) those for having been born at all and (2) those for the expenses related to his defect or deformity. With respect to damages for having been born at all, *Jacobs* is of no assistance. It denied the parents any recovery for such damages. The rationale relied on by the Court for denying recovery of these damages to the parents applies with equal force to deny recovery to a minor child, i.e., the impossibility of measuring the value of existence with physical defects against the value of non-existence, and the notion that life, no matter how defective or unsatisfactory, is preferable to non-existence.

■ With respect to the second kind of damages, the Court in *Jacobs* did recognize a cause of action, denominated wrongful life, brought *by the parents* of a defective child to recover the expenses reasonably necessary for the care and treatment of their child's physical impairment. Such a limited damage recovery, the Court reasoned, does not offend notions of public policy. The carefully circumscribed holding in *Jacobs* cannot, however, be stretched to authorize the recovery sought here by a child, in his own right, of expenses incident to the care and treatment of his physical impairment. We find no language in *Jacobs*, express or implied, to support such a recovery.

A federal district court in Ohio, applying Texas law, has interpreted *Jacobs*, as we do, to bar recovery to a child on a wrongful life claim.

" 'Insofar as the child sues for damages for life itself ... the objection is more understandable. The objection is to an award based upon speculation as to the quality of life....' This language [from *Jacobs*], while dictum, gives at least some indication of Texas law on this issue. Finding no Texas case law to the contrary, this Court is of the opinion that a Texas Court confronted with this issue would conclude the plaintiff's [an infant] damages are unmeasurable and that therefore summary judgment must be granted to defendant."

*Smith v. United States*, 392 F.Supp. 654, 656 (N.D. Ohio, E.D.1975).

In summary, until a tort of wrongful life is recognized by the Supreme Court or the Legislature, summary judgment denying relief to the child on such a claim was proper.

Affirmed.