Bobby NEAGLE, Appellant,

v.

George C. NELSON, M.D., et al., Appellee.

No. 13–82–023–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 1, 1983.

Rehearing Denied Oct. 6, 1983 (overruled).

Phil Brown, Amarillo, for appellant.

Paul Green, San Antonio, James H. Robichaux, Corpus Christi, for appellee.

Before NYE, C.J., GONZALEZ and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from the granting of a summary judgment to all defendants in a medical malpractice case. In December, 1977, George C. Nelson, M.D., Roy J. Hotz, M.D., L. Norris, L.V.N., and N. Stillwell, R.N., appellees, allegedly left a surgical sponge in the appellant's abdomen after an appendectomy. The date of last examination or treatment by any defendant was January, 1978. Appellant filed suit in October, 1980. The trial court granted the summary judgment on the ground that the suit was barred by the two-year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 4590i § 10.01 (Vernon Supp.1982). We agree

that the trial court's judgment should be affirmed.

■ Appellant's first argument is that the limitations period should begin when the plaintiff discovers or reasonably could have discovered the negligence of the defendants. See *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977); *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967). Under the "discovery rule," if applicable, the summary judgment would have been improper because the appellant presented some summary judgment proof that he filed suit within two years after he discovered the negligent treatment by appellees. The current statute of limitations applicable to this action, added by the legislature in 1977, provides in pertinent part:

> "Not withstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed;" Tex.Rev.Civ.Stat.Ann. art. 4590i § 10.01 (Vernon Supp.1982).

This language clearly abrogates the "discovery rule." *Littlefield v. Hayes,* 609 S.W.2d 627 (Tex.Civ.App.—Amarillo 1980, no writ). The legislature has now given us an "absolute" two-year statute of limitations in this type of case. Because it is undisputed that appellant did not file his suit within two years of the date of the alleged negligent treatment or the date of last treatment by any of the defendants, the granting of the summary judgment was correct and in conformity with the statute. This point of error is overruled.

■ In the remainder of his points of error, appellant attacks the constitutionality of article 4590i, § 10.01. Appellant complains that this limitations provision is void because it gives a preference to one school of medicine in derogation of Tex. Const. art. XVI § 31. This contention is not properly before us because it is raised for the first time on appeal. Tex.R.Civ.P. 166–A(c); *City of Houston v. Clear Creek Basin*

*Authority,* 589 S.W.2d 671, 678 (Tex.1979). Point of error number two is overruled.

Appellant next contends that the act violates Tex. Const. art. III § 35 "because the title of the act fails to give proper notice of change in the law" and "because the act contains multiple subjects." Article III § 35 of our state constitution provides:

> "No bill, . . . shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

Article 4590i went through the 1977 session of the Texas Legislature as House Bill No. 1048. The title of the bill was as follows:

> "An Act Relating to Health Care Liability Insurance, Certain Providers of Health Care, and Certain Health Care Liability Claims; Providing Penalty; Adding Articles 5.15–1, 5.15–2, and 21.49–42 and Repealing Article 5.82 of the Insurance Code; Amending Article 21.49–3 of the Insurance Code; Amending Section 26.-01(b), Business and Commerce Code; Amending Section 1, Chapter 317, Act of the 57th Legislature, Regular Session, 1961 (Article 1a, Vernon's Texas Civil Statutes); Repealing Section 3, Chapter 331, Act of the 64th Legislature, 1975."

1977 Tex.Gen.Laws, Chapter 817, at 2039.

■ The test of sufficiency of a legislative title is whether it gives reasonable notice of contents of the bill to an average legislator or interested citizen. *Hayman Construction Co. v. American Indemnity Co.,* 471 S.W.2d 564 (Tex.1971). This provision of the Constitution, as well as the title of the questioned statute, is to be liberally construed in favor of constitutionality. *Robinson v. Hill,* 507 S.W.2d 521, 524 (Tex. 1974). Under these standards, we find that the title of H.B. No. 1048 was sufficient to give reasonable notice of its contents and that article 4590i § 10.01 is not unconstitutional because of an insufficiency in the legislative title. Point of error number four is overruled.

■ The test of validity of a statute containing multiple provisions is 1) whether such provisions relate directly or indirectly to the same general subject; 2) have a mutual connection; and 3) are not foreign to the subject expressed in the title. *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593 (Tex.1975). Clearly, all the provisions of the bill here in question are sufficiently interrelated to meet these constitutional standards. Point of error number five is overruled.

■ In his remaining points of error, appellant claims that the act violates various provisions of the Texas and United States Constitutions by granting a class of defendants special privileges and immunities, depriving appellant of his right to open courts, due process of law, and denying equal protection of the law. A proper analysis of these complaints requires the factual determinations of whether there is a reasonable basis for any classifications made by the act, whether the legislature has acted unreasonably or arbitrarily, whether the limitations period provided is so short as to amount to a denial of a reasonable opportunity to enforce a claim. See *Sax v. Vottler,* 648 S.W.2d 661 (Tex.1983); *Robinson v. Hill, supra; Kentucky Union Co. v. Kentucky,* 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137 (1910); *Wilson v. Iseminger,* 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902).

■ In the instant case, appellant's summary judgment evidence was insufficient to raise material fact issues concerning the reasonableness of the act. The appellant made no attempt to research the legislative action or to supply summary judgment evidence of a basis for the unconstitutionality of the act. The record is void in this regard. In such situations, we must presume the validity of the act. If any factual examination is to be supplied from outside the record to inquire into the constitutionality of legislation, such adventure should be done by our Supreme Court. It cannot be done by an intermediate court of appeals. See *Miller v. Hood,* 536 S.W.2d 278 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); see also *Jones v. International Association of Firefighters,* 601 S.W.2d 454 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Burnett v. City of Houston,* 442 S.W.2d 919 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd); *Nelson v. Krusen,* 635 S.W.2d 582 (Tex.App.—Dallas 1982, writ granted). All of appellant's remaining points of error are overruled.

The judgment of the trial court is affirmed.

GONZALEZ, Justice, dissenting.

I respectfully dissent. I would sustain appellant's fifth and seventh points of error and hold that the two year statute of limitations deprives appellant of due process of law in violation of the Texas Constitution, article I, section 13, and the 14th Amendment of the United States Constitution.[1]

In the recent case of *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983), the Court struck down article 5.82, section 4 of the Insurance Code,[2] as it applies to *minors,* on the ground that it is in violation of the Texas Constitution, article I, section 13, commonly known as the "Open Courts Provision." In so doing, the Court declined to address the issue of violations of rights guaranteed by the United States Constitution, being of the belief that such was unnecessary in that our State Open Courts Provision accords Texas citizens additional rights to those provided for in the United States Constitution. 648 S.W.2d at 664. The Open Courts Provision "is, quite plainly, a due process guarantee." Id.

---

1. The constitutionality of the Medical Liability and Insurance Improvement Act, in general, Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp. 1982) and of Section 10.01 in particular, has been the subject of much discussion. Compare Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications,* 55 Tex.L.R. 759 (1977) with Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice,* 10 Tex.Tech.L.R. 419, 427 (1979).

2. Tex.Rev.Stat.Ann. art. 4590i § 10.01 (Vernon's Supp.1982) had as its predecessor, art. 5.82 § 4 of the Insurance Code.

The question of the constitutional validity of an absolute two year statute of limitations as applied to *adults* was not before that Court. It is squarely before this one.

Generally, a State is free to prescribe a *period of limitations within which claims must be asserted or be barred and such limitation does not constitute a denial of due process unless the time period is so short as to amount to a denial of a reasonable opportunity to enforce the claim. Kentucky Union Co. v. Kentucky,* 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137 (1910). As stated by the United States Supreme Court in *Wilson v. Iseminger,* 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902):

> "It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts.... [W]hat shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice....
>
> In all such cases the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge, and we cannot overrule the decision of that department of government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators, and must measure the time of limitations in the midst of the circumstances which surrounded them, as nearly as possible...." 185 U.S. at 62–3, 22 S.Ct. at 575–76.

A similar test is applied to determine the validity of a statute under our Open Courts Provision: does it unreasonably abridge a justifiable right to obtain redress for injuries caused by the wrongful acts of another so as to amount to a denial of due process? *Sax v. Votteler,* 648 S.W.2d at 665.

The primary purpose of the Act was to remedy or correct the climate created by a "medical malpractice crisis" which had arisen within our State. Article 4590i, Sec. 1.02(a)(5). While a number of factors were found to be at the root of this problem, i.e., the amounts being paid by insurers in judgments and settlements, the primary culprit appears to have been "a serious public problem in availability and affordability of adequate medical professional liability insurance...." Id., Sec. 1.02(a)(4). All other causes enumerated were simply contributing factors to this problem. See *Final Report of the Texas Medical Professional Liability Study Commission to the 65th Texas Legislature,* pp. 3–6 (December 1976) (hereinafter *"Study Commission"*). In this regard, it is important to realize that many of the findings considered by the Legislature in drafting the Act were not based upon Texas experience. Study Commission, *supra,* p. 9.[3] We need, then, some data for determining the reasonableness of Section 10.01.

As stated by then Secretary of the United States Department of Health, Education and Welfare, Mr. Casper Weinberger:

> "There is a great deal of concern about medical liability insurance. There is very little definitive information to document or help us understand clearly the problem." *Hearings before the Subcommittee on Health of the Committee on Labor and Public Welfare, United States Senate, 94th Congress, 1st Session,* p. 319 (1975) (hereinafter *"Senate Hearings"*).

The medical malpractice problem is one of staggering proportions. In 1975, at the time that information was being compiled by the Study Commission, Dr. Roger O. Egeberg of the United States Department of Health, Education and Welfare, estimat-

---

**3.** We note with interest the statement made by Dean Page Keeton, Chairman of the Study Commission, when testifying before a House Legislative Committee Seminar: "I would say our Study Commission simply hasn't got the kind of data that we ought to have in order to say whether the rates [being charged by insurers for medical malpractice insurance in Texas] are justified." Study Commission, *supra,* p. 71.

ed that as many as 700,000 injuries occur each year due to medical negligence. *Lubbock Avalanche Journal,* June 21, 1975, p. D–15. Another estimate placed this figure at 660,000 per year. Senate Hearings, *supra,* p. 176. This indicates that approximately 2.3% of all hospital admissions result in injuries to the patient due to medical negligence. Id. Additionally, data compiled by the American Insurance Association, an organization composed of some of the country's major malpractice underwriters, reveals that *"most malpractice incidents are not discovered until five or six years after the occurrence."* Id. at p. 489 (emphasis supplied).

I recognize that a balance of society's needs with those of individual claimants must be struck, and "society is best served by a complete repose after a certain number of years even at the sacrifice of a few unfortunate cases." *Dunn v. St. Francis Hospital, Inc., supra,* 401 A.2d 77 at 81 (Del.1979).

However, it is apparent that with an absolute two year statute of limitations, we are no longer in the realm of the "few unfortunate cases," or the occasional meritorious claim being rendered nonassertable. Rather, such a provision serves to close our courts to the majority of a large class of claimants with no other forum for redress of their grievances. Such serves only to "place health care providers beyond public accountability." Statement of Study Commission Member Harry Hubbard, Jr., Study Commission, *supra,* p. 70. Society's best interests are no longer served. Therefore, I would hold the "absolute" two year statute of limitations unconstitutional because it is unreasonable and "manifestly so insufficient that [it] becomes a denial of justice...." *Wilson v. Iseminger, supra.*